MORGAN *v.* ILLINOIS INSURANCE CO.

1. FIRE INSURANCE—VACANCY—FORFEITURE.
   Where the assured under a fire-insurance policy applies to the local agent for a vacancy permit, and pays him for the same, and the agent receives the policy, and sends it to the home office of the company, where it is marked "Canceled," and retained by the company, and the agent afterwards informs the assured that the permit has been issued and attached to the policy, the company cannot escape liability on the ground that the dwelling in which the insured property was contained was vacant without permission.

2. SAME—AGENCY—ADJUSTER.
   Where, after a loss by fire, a person having in his possession the insurance policy, which he has apparently received from the home office, is introduced to the assured by the local agent as the adjuster for the company, the assured has a right to consider him as such adjuster.

3. SAME—WAIVER OF PROOFS OF LOSS.
   A denial of liability by the adjuster for the reason that the policy had been canceled amounts to a waiver of proofs of loss.

Error to St. Clair; Atkinson, J.   Submitted November 20, 1901.   (Docket No. 143.)   Decided April 25, 1902.

*Assumpsit* by Albert A. Morgan against the Insurance Company of the State of Illinois on a policy of insurance.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*Hovey & Stockwell*, for appellant.

*Burt D. Cady* (*George G. Moore*, of counsel), for appellee.

LONG, J.   This is a suit on a fire-insurance policy.   The policy was for $500, dated August 22, 1898, for three years, covering the household goods in plaintiff's cottage at Edi-

son Beach, situate between one and two miles from his photograph gallery in Port Huron. The policy was the usual Michigan standard form. The plea was the general issue, with notice: *First*, a vacancy for more than 10 days prior to the fire; *second*, failure to furnish proofs of loss. The case was tried before a jury, who returned a verdict in favor of plaintiff. Defendant brings error.

The policy provides that it shall be void if the building therein described be or become vacant or unoccupied, and so remain for 10 days, provided a loss shall occur while such breach continues. It also further provides that no officer, agent, or representative shall have power to waive any of the provisions of the policy, except such as are made the subject of agreement by the policy, and that, as to such provisions, no officer or agent shall have such power unless the waiver be written on or attached to the policy; nor shall any privilege or permission affecting the insurance be claimed by the insured unless so written or attached.

It appears that on August 22, 1898, Manes, the local agent, issued the policy to the plaintiff on the furniture, and delivered it to the plaintiff, received the premium therefor, and remitted it to the company. About November 14, 1898, the plaintiff also held a policy in the Western Insurance Company, covering the house or cottage. He applied to Manes to have the matter so arranged that he might be away from the house a part of the time for about two months. With the plaintiff's consent, the policy in the Western Insurance Company was canceled, and a new policy issued in the Washington Insurance Company, containing a five months' vacancy clause. Manes was the agent of this company, as well as the Illinois Insurance Company. He told the plaintiff he did not think it necessary to have vacancy permits; that the policies would be good without them. But the plaintiff desired to have no doubt about the matter, and insisted upon having the permits arranged for, and handed the Illinois policy to Manes for that purpose. Manes, at his own suggestion, went to

Detroit to arrange for the consent of the Illinois Insurance Company to the granting of a five months' vacancy permit, and the plaintiff paid him $3 therefor. Manes did go to Detroit, and on his return told the plaintiff that the permit had been attached to the Illinois policy. The policy was not given back to the plaintiff, but was sent either by Manes, or Bamlet & Miller, the Detroit agents of the defendant company, to the company at its head office, who canceled it without plaintiff's knowledge. Thereafter the plaintiff moved a portion of his furniture to his photograph gallery in Port Huron, going back to the cottage from time to time, sleeping there a portion of the time, and taking some of his meals there. He had boarded up the windows of the cottage all around, only going there occasionally.

The fire occurred January 5, 1899. It appeared that, after the fire, a man by the name of Miller, of the firm of Bamlet & Miller, came to Port Huron to adjust the loss. He directed the plaintiff to make out proofs of loss, and agreed to mail plaintiff a printed list of household goods, which the plaintiff was to fill out. The plaintiff made out the list, and testified that he showed the same to Miller, who said it was all right. On February 7th the plaintiff wrote the company, stating that, after waiting 30 days, he learned that, through some fault of the Detroit agency, his policy had been canceled; that he got no satisfaction from the local office,—and asked that the company write him about his loss. On the same day plaintiff's attorney also wrote the company of the loss sustained by the plaintiff, and asked when plaintiff could expect payment of his insurance. After these letters were written, a man by the name of Corry came to Port Huron, having in his possession the policy issued to the plaintiff, and it is claimed by the plaintiff that Corry then stated to him that the defendant company denied all liability; and thereafter no proofs were forwarded to the company. The plaintiff testified that, when Corry appeared with the policy at Port Huron, he was introduced to him by Manes as the adjusting agent of the company.

The court charged the jury as to the defendant's contentions as follows:

"Now, the defendant in this case, as I have told you, admits the issuing of the policy. It admits that it was legally executed, and that it was not canceled by the delivery to Manes, and the word 'Canceled' written upon it; and the company makes no claim whatever under the word 'Canceled.' So you may consider the policy as valid, unless defeated by a failure to comply with the conditions as to occupancy and proofs of loss. Defendant claims that, under this policy, plaintiff has lost all right, because from some time in November or December, 1898, up to the time of the fire, in January, 1899, the house in which the furniture was stored was vacant or unoccupied, against the form and condition of this policy. The defendant also claims that in the fall of 1898 Mr. Morgan permanently removed from this residence, and took up his residence downtown in the gallery, intending to remain away until warm weather, or at least until after February, 1899. Defendant also claims a failure by the plaintiff to make any proofs of loss as required by the policy; and the defendant also denies the plaintiff's claim that such proofs have ever been in any way waived by the defendant company.

"Now, gentlemen, as to whether this house was vacant or unoccupied,—I am using the words of the policy now, —I have concluded to leave the question to you. I will tell you what the law means by 'vacant or unoccupied,' in reference to a dwelling house. For a dwelling house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode; not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage. It is not sufficient, therefore, that furniture, tools, or other chattels may be left in the building, or that it is occasionally visited or inspected by some one, or is used and controlled, though not inhabited, by a tenant, or is used temporarily as a place of abode, or that unsuccessful efforts have been made to procure an occupant; and occupancy by one who has conspired to burn the building will not be considered occupancy. Referring back to the definition, a dwelling house, to be in a state of occupancy, must have in it the presence of human beings as at their customary place of abode; not absolutely and uninterruptedly continuous, but that must be the place of usual return and

habitual stoppage. Then temporary absence, either on pleasure or from accident or for business purposes, does not constitute a dwelling vacant or unoccupied, within the terms of this policy; and I charge you that if Mr. Morgan left the place only temporarily, and if it was his permanent home, and if he intended to return to it; if, as you ordinarily view houses and homes, it was his residence and his home, and that this was only a temporary absence, —why, then, that absence would not defeat his policy. But if he left it, as is claimed by the defendant here, with the intention of remaining permanently downtown all winter, and not to return until spring, or until February, with the definite purpose in his mind to live down here during that time, then his absence would not be what the law calls a temporary absence, and his policy would be avoided, unless the company assented to the absence or vacancy, or want of occupancy, as is contended, to which I will refer later.

"Now, I charge you, gentlemen, that from what was said and done here by Mr. Manes in introducing Mr. Miller to Mr. Morgan as defendant's State agent, in connection with the fact that Miller inspected this property, and directed Morgan as to how to make out his loss, and in connection with the fact that the schedule which was made out in pursuance to that direction comes from the company, and is produced here by the company, and in view of the fact that Mr. Corry, when he came here, brought the plaintiff's policy with him, I charge you that those men had authority to represent the defendant company, and that whatever they did was binding upon the defendant company; and if you find that Mr. Corry said to the plaintiff that this company repudiated all liability, because the policy was canceled, that would excuse the plaintiff from making any other proof of loss. If you find that Mr. Corry did not say that, why, then, the plaintiff, not having made his regular proof of loss under the policy, is not entitled to recover. So that you will ascertain whether the company, through its representative, Mr. Corry, repudiated all liability under this policy, and claimed that it was canceled; and, if you find that that was not done, then I charge you that the papers—the list of goods furnished here by Mr. Morgan—would not be a compliance with the conditions of his policy, and would not be a proof of loss, and he would not be entitled to recover. * * *

"I shall have to repeat a little, in giving some requests which I am called on to give here. If you find from the evidence that the policy of insurance sued upon in this case was delivered by the plaintiff to E. F. Manes, the agent of the defendant, for the purpose of securing a vacancy permit, and if, at the time of the fire, the policy was in the hands of the insurance company upon the plaintiff's understanding that it was there for the purpose aforesaid, and the agent had neglected to return it to him, and if you find that the agent, by mistake, had written the word 'Canceled' upon the policy, and left it with the State agent of the company, I charge you (it is conceded here that the word 'Canceled' shall have no effect) those acts, if you find that Manes agreed to indorse a vacancy permit upon it, and told Mr. Morgan that it was already indorsed, would constitute a waiver of that condition of the policy requiring that vacancy permit, and, so far as that condition is concerned, plaintiff would be entitled to recover.

"I charge you, also, that if you find that, at the time of the fire, plaintiff was only temporarily absent from his dwelling house, and left his household furniture, etc., in the house with the intention of returning, that the premises would not be unoccupied and vacant, within the meaning of this policy, and, if otherwise liable, this company would be responsible for the loss. At the same time, in giving you this request, I remind you again of the definition which I have given you of what constitutes occupancy of a dwelling house.

"It is claimed by the defendant that it is not liable, because the plaintiff failed to furnish proofs of loss, verified, within 60 days after the fire. Now, I charge you that this is a clause in the policy that an insurance company has a right to waive strict compliance with; and when it does waive such proofs of loss, either expressly, or by a course of conduct calculated to throw the insured off his guard, as by a distinct refusal to pay the loss, based on some other defense, so that proofs are not furnished within the time fixed by the policy, it cannot afterwards take advantage of the delay, and set it up as a defense to an action on the policy. I therefore charge you that if the defendant, through its agents who had in charge the adjustment of the plaintiff's loss, denied liability and refused payment upon the sole ground that the policy was canceled at the time of the fire, and for that reason there

is no liability existing on the part of the insurance company, then I charge you that this would be a waiver of the right of the insurance company to require the proofs of loss mentioned in the policy of insurance, and, if the defendant is otherwise liable, plaintiff would be entitled to recover."

We think this charge presented to the jury all the questions which, under the testimony in the case, were proper to be submitted, and that the learned circuit judge correctly stated the law, under the circumstances shown. We think that, when Corry appeared at Port Huron in possession of the policy, which he had apparently received from the home office, the plaintiff might well have regarded him as the agent of the company, authorized to make statements that the company denied liability, and that he was therefore justified from that moment in withholding any proofs of loss, and that this statement, under our decisions, amounts to a waiver of proofs of loss.

We think, also, that the plaintiff, under the statement of Manes, the agent of the company who issued the policy, collected the premium, and received the $3 for the vacancy permit, had a right to rely upon such statement that the vacancy permit had been issued and attached to the policy.

From a careful examination of the record, we are satisfied that the case was fairly submitted to the jury.

The judgment must be affirmed.

The other Justices concurred.