DOUGLAS *v.* INSURANCE COMPANY OF NORTH AMERICA.

1. INSURANCE — AUTOMOBILES — THEFT INSURANCE — BREACH OF
   WARRANTY—PLEADING—SPECIAL DEFENSE—COURT RULES.
   In an action on an insurance policy against the theft of
   an automobile, where the defense of breach of warranty
   in giving the wrong number of the automobile in the
   application was not specially pleaded, as required by
   Circuit Court Rule No. 23, and no proof offered that the
   claimed misrepresentation resulted in any injury to de-
   fendant, said defense was not available.

2. SAME—PROOFS OF LOSS—WAIVER.
   If defendant, through its authorized agent, when plaintiff
   went to its office to report his loss, took charge of the
   case, asked such questions as it saw fit, and then promised
   to return the car or pay for it within 60 days, but later
   denied liability and refused payment, it was needless for
   plaintiff to tender subsequent proof of loss, since defend-
   ant by its conduct waived same.

3. PRINCIPAL AND AGENT—AGENCY MAY BE INFERRED FROM FACTS
   AND CIRCUMSTANCES.
   While an agency cannot be proved by the statements, dec-
   larations, or admissions of an alleged agent, standing
   alone, yet, particularly in the case of corporations, which
   can act only through agents, the existence and extent of
   an agency may be inferred from attending facts and
   circumstances, and if there be in proof facts from which
   an agent's authority may fairly and reasonably be inferred,
   the question becomes one for the jury.

4. SAME—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY.
   On an examination of the whole record, *held*, that there was
   sufficient testimony on the question of agency to take the
   case to the jury.

5. INSURANCE—PRINCIPAL AND AGENT—INFERENCES.
   Where defendant's attorney, who assumed to act as its
   agent in dealing with plaintiff in respect to his loss,
   was not sworn as a witness, although available, it was
   215—Mich.—34.

competent for the jury to infer that he was not sworn because his testimony would have been detrimental to de. fendant.

6. NEW TRIAL—EXCESSIVE VERDICT—WEIGHT OF EVIDENCE.
   The motion for a new trial on the ground that the verdict was excessive and contrary to the evidence was properly denied.

Error to Wayne; Goff (John H.), J.    Submitted April 12, 1921.    (Docket No. 70.)    Decided October 3, 1921.

Assumpsit by George C. Douglas against the Insurance Company of North America on a policy of insurance.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Frederick J. Ward* (*John B. Coughlin*, of counsel), for appellant.

*Harry C. Milligan*, for appellee.

. STEERE, C. J.    In May, 1918, plaintiff, who lived in Detroit, bought a used Ford touring car from the "Studebaker people" for $250, paying $110 down and signing the customary contract of purchase with deferred payments by which he agreed to pay the balance within 6 months and insure the car for protection of both parties as their interests might appear. He accordingly insured the car with defendant against loss by theft, fire, etc., in the sum of $225 for a period of one year from May 31, 1918, and paid for his car in full within the prescribed 6 months.    He had possession and use of the car from the time of purchase until March 16, 1919, when, during his temporary absence from home, a thief broke into his locked barn and stole it.    The theft was promptly reported to the police department by his wife and word sent to plaintiff who returned that night and the next day first

notified a man named Brown who wrote the policy, as plaintiff testified, and whose name appears on its outside in type-writing. Brown told him to go to the company's adjuster, Fred Ward, in the Dime Bank building. Plaintiff then went to the office of defendant on the 11th floor of the Dime Bank building, where the name on the door was "The North American Insurance." The first person he met there was Frederick Ward, for whom he asked and who in answer so identified himself. When told of the stolen car and shown plaintiff's policy he said to plaintiff that he would take care of him, had the stenographer make out a sheet and said they would advertise it. Plaintiff described the car and answered Ward's questions, laid his policy and license tag down before the stenographer and answered her questions. After the paper was filled out and she told Ward she had it all down he, as plaintiff testifies, "said they would either pay me for it—if they didn't find it in 60 days they would pay for it and, if they did find it, they would replace it as good as it was when it was took."

After waiting 60 days plaintiff called Ward up in relation to the matter, getting his number from the telephone directory, and Ward told him to go to the police garage on Beaubien street, which he did but his car was not there. The next day plaintiff went to the office and saw Ward about it again, who then, as plaintiff testifies, "said I could not show that they owed me anything; he said there was a difference in the number, something about the number."

Failing to secure a settlement as he claimed Ward promised, plaintiff put the matter in the hands of Harry C. Milligan, his attorney. Milligan testified that when plaintiff left the policy with him for collection he at once went to the office of Mr. Ward whom he had known for 7 or 8 years and asked him why the company would not pay the money due on the

policy; that Ward had the papers in the matter, a file of Douglas *v.* Insurance Co., and replied, "they won't pay it because the man took out insurance on this car and he gave us a number which covers a car built about 1912, whereas, as a matter of fact, he is trying to collect for a 1915 car;" that during the time witness had known Ward "he always maintained his law office with the Insurance Company of North America or the Royal Indemnity Insurance Company;" that Mr. Ward's law office when witness interviewed him was next door to the insurance company. Frederick J. Ward is attorney of record for defendant in this case. No testimony was introduced by defendant.

Plaintiff's sales contract from the Studebaker people, his insurance policy and automobile certificate of registration issued to him by the secretary of State were introduced in evidence. In the sales contract the car is described as a used Ford model touring car "Serial No.—none, motor No. 895489." In the insurance policy under the heading "Warranties," it is described as "Model year 1915; trade name Ford; Type of body —touring; Factory No. 1502461," while in the certificate of registration it is described as a Ford touring car, "Factory number 895489." In plaintiff's declaration it is described as a Ford touring car of the year 1915, "with engine No. 895489." Of the apparent discrepancy in numbers, plaintiff testified that the Studebaker people filled the blank spaces in both the contract and application for insurance, obtained the policy which they kept with the license card until his last note was paid, that the number on his license tag of 1919 was copied from that of the previous year by a party who filled out his application, that he never had but the one car to which the papers relate, until after it was stolen, he was not familiar with car numbers, knew nothing about how it was numbered

and had not examined the papers before it was stolen.

Defendant moved for a directed verdict at the close of plaintiff's testimony, on various grounds, particularly emphasizing this discrepancy in numbering, as to which it was said in its counsel's brief, "The number identifies the car and Ford car No. 895489 is a car of the 1912 series, which no insurance company would insure in 1918, when it was six years old."

Undoubtedly a misrepresentation as to the model and age of a car is a misrepresentation of a material fact, for the value of a car is clearly related to the year of its issue, but in reply to the quoted statement of defendant's counsel plaintiff's counsel asserts in his brief:

"There is no testimony in the case that the above assertion is true and the fact is that it is not true and an inquiry at any Ford agency will prove that it is not true.    This number was borne by cars made in the months of September or October, 1915.    A reference to any book showing the engine numbers of Ford cars will prove that in 1915 the numbers ran from 680348 to 1028313."

Apparently neither party took the trouble to offer evidence as to the special significance of the Ford numbering, and unfortunately we find the record destitute of testimony to support or refute the conflicting assertions of counsel in the particular noted.

Defendant introduced no evidence at all, the testimony of plaintiff himself is substantially all the testimony in the case and to be viewed in its most favorable light against directing a verdict for the defense.    While ignorance of the contents of the warranty in the application he signed for insurance would not excuse him, and he throws no light on the claimed discrepancy in numbers, he testifies clearly and positively as to the car purchased, insured and stolen, that it was a 1915 used Ford touring car bought from the Studebaker agency, which applied to defendant and

had it insured for protection of both, and that it was correctly described in the application, unless it be the number, it was the only car he had and the car stolen from him as related.

Defendant's five notices of special defense attached to its plea of the general issue relate entirely to plaintiff's failure to make proof of loss, inventory, appraisal, etc., within the required time. No notice was given of breach of warranty by a wrong number of the car, or any reliance on a false number by defendant to its damage. If insertion of the wrong number in the application as complained of afforded a ground of defense it was as breach of warranty, for which, under section 4 of Circuit Court Rule No. 23, notice of special defense is required, as follows:

"In a suit upon a policy of insurance, if the defendant shall rely, in whole or in part, upon any breach of any of the conditions, agreements, representations or warranties of the policy or application therefor, or upon the failure to perform or make good any promise, representation or warranty, or upon the failure to furnish any proof of loss, as required by the policy, there shall be added to the plea a notice plainly indicating the nature of the defense relied upon."

Not only was this special defense not pleaded but there was no proof offered that the claimed misrepresentation as to the number resulted in any injury to defendant.

Apparently the closest question in this case is that of agency, the authority of Attorney Ward to make the promises and refusals in behalf of the defense, sworn to by plaintiff. If the issue of his agency was supported by sufficient facts to carry the question to the jury the special defense of failure to make proof of loss in time and manner prescribed in the policy falls. The jury found the agency established by a preponderance of evidence. Plaintiff went to Ward as adjuster of defendant, notified him that the insured

car had been stolen and showed him the policy. Plaintiff testifies, and it is not denied, that Ward said, "I will take care of you," took charge of the matter, examined the papers, asked such questions and made such a record of the case as he saw fit and then promised they would return the car or pay for it within 60 days, but later denied liability of the company and refused payment. Such conduct on the part of the company through its authorized agent renders it needless to tender, and waives, subsequent proof of loss. 2 Joyce on Insurance (2d Ed.), p. 1437; *O'Brien* v. *Insurance Co.,* 52 Mich. 131; *Young* v. *Insurance Co.,* 92 Mich. 68; *Morgan* v. *Insurance Co.,* 130 Mich. 427.

Defendant timely objected to all testimony given by plaintiff as to Ward's agency and later covered the question generally by moving to strike out all testimony directed to his authority to act as agent. Upon that contention it is urged that no evidence was produced of Ward's authorization by the company to act as its agent, and plaintiff's whole case is based on testimony of himself and his attorney as to what Ward said. *Ward* v. *Dunnebecke,* 184 Mich. 703; *Fisk* v. *Insurance Co.,* 198 Mich. 270, and other authorities are cited to the rule that an agency cannot be proven by the statements, declarations or admissions of an alleged agent standing alone.

That general rule is well settled and not questioned by plaintiff's counsel, who denies the evidence of Ward's agency is limited to his bare statements, and claims the proven facts and circumstances attending Ward's assumption of authority, when and as he did, in performance of the duties of an agent for the company, made a case for the jury under the general rule of permissible inferences and presumptions in such cases, thus stated in 2 Joyce on Insurance (2d Ed.), p. 1092:

"If a person acts openly and notoriously in exercising the duties of a particular agency, and under

such circumstances as imply knowledge of the company, the presumption attaches that he has the authority he thus claims to possess." * * *

The difficulty of showing the agent's authority by direct and positive proof, particularly in the case of corporations which can only act through agents, is recognized and such proof is not imperative. The existence and the extent of an agency may be inferred from attending facts and circumstances, and if there be in proof facts from which an agent's authority can be fairly and reasonably inferred, the question becomes one for a jury. That subject is instructively discussed with citations of many authorities, in 21 R. C. L. p. 820. The trial court very fairly submitted the question of Ward's agency to the jury, based upon the facts and circumstances proven to which he called attention, saying:

"All those facts are to be considered by you in connection with the other proof, remembering all the time that the company will not be bound by the acts of Mr. Ward, unless he was their agent, and that his statements that he was the agent would not be sufficient proof of his agency."

When plaintiff discovered the theft of his car he acted promptly, got in touch with Brown, whose name appeared on his policy and who wrote it as plaintiff understood, and notified him of the loss. Brown directed him to see Ward, who was the adjuster, on the 11th floor of the Dime Bank building. He went to that floor of the building and into an office which had defendant's name on the door. It cannot be doubted that he went to defendant's office for the purpose of reporting his loss and doing whatever was required of him to collect his insurance. The first person he met there was Ward, the man Brown had told him was the adjuster, who was apparently in charge of the office, answered his notice and inquiries with assur-

ances he would take care of him, proceeded in an authoritative manner to take charge of the case as related.

While neither the statement of Brown or Ward that the latter was the company's adjuster would prove his agency, they were at least assuring introductory incidents in connection with the place he went in his attempts to notify and do business with the proper agent of defendant, which would naturally allay any misgivings and lead him to give full faith and credit to what Ward did and said, without further investigation as to his authority.

It would be permissible for the jury to consider in connection with other facts and circumstances shown that defendant has at least indorsed Ward's refusal to pay because of the discrepancy in number, that Ward, who is its attorney in the case and an available witness, did not take the stand in explanation or denial of what he is shown to have said and done while he was in defendant's office and apparently in charge of its business. Under such conditions it is competent for a jury to infer that he was not sworn as a witness by defendant because his testimony would be detrimental to it. *Dowagiac Manfg. Co.* v. *Schneider*, 181 Mich. 538; *Griggs* v. *Railway Co.*, 196 Mich. 258.

We conclude from an examination of this record as a whole there was sufficient testimony on the question of agency to take the case to the jury and we are not prepared to say, as urged by defendant in its motion for a new trial, that the verdict is excessive or contrary to the evidence as urged in defendant's motion for a new trial.

We find no reversible error in the case, and the judgment is affirmed.

Moore, Wiest, Fellows, Stone, Clark, Bird, and Sharpe, JJ., concurred.