GAMBINO v. NORTHERN INSURANCE CO. OF NEW YORK.

INSURANCE—FIRE INSURANCE—PROOF OF LOSS—WAIVER BY LOCAL
AGENT OF INSURER.

> Where a fire insurance policy insuring the interest of the
> owners and mortgagee was surrendered by the latter and
> canceled without the owner's knowledge, and later a loss
> occurred, statements of the company's local agent, who
> had authority to solicit business, write and issue policies,
> and collect premiums, and of his employee, made to the
> owners' agent and attorney, that the policy had been can-
> celed and that there was no liablity thereunder, did not
> amount to a waiver of proof of loss required by the policy,
> a Michigan standard form, in the absence of proof that
> either said agent or his employee had authority to ad-
> just losses or deny liability for the company. McDONALD,
> C. J., and BIRD and MOORE, JJ., dissenting, on the ground
> that by canceling the policy the company itself denied
> liability.[1]

Error to Wayne; Driscoll (George O.), J., presiding.
Submitted June 10, 1925. (Docket No. 76.) De-
cided October 27, 1925. Opinion on rehearing 234
Mich. 651.

Assumpsit by Vito Gambino and another against the
Northern Insurance Company of New York on a policy
of insurance. Judgment for plaintiffs on a directed
verdict. Defendant brings error. Reversed, and no
new trial ordered.

*Frederick J. Ward,* for appellant.
*Daskam, Fox & Reid,* for appellees.

Plaintiffs were the owners of a two-family flat
in Detroit upon which there was a mortgage to the
Gratiot Lumber & Coal Company. Herman Fischer,

---

[1]Fire Insurance, 26 C. J. § 359.

the local agent of defendant, issued defendant's policy of fire insurance on it for $3,000, loss, if any, payable first to the mortgagee, and second to plaintiff Vito Gambino. The policy was procured through one Garessi, an employee of Fischer. The premium was paid by the lumber company and the policy delivered to it. Later plaintiff repaid the lumber company the amount of the premium. The proof shows that it was a three-year policy. About January 20, 1920, the policy was surrendered by the lumber company and canceled, and the refund paid to the lumber company. Plaintiffs had no knowledge of this fact. On September 19, 1921, the building was practically destroyed by fire. About two weeks after the fire plaintiff's agent was informed by Garessi, of whom he made inquiry, ·that the policy had been canceled and the refund paid to the lumber company. On May 8, 1922, an attorney representing plaintiff called on Mr. Fischer .with reference to the matter. He testifies:

"Mr. Fischer said that the policy had been returned to the home office, as it was canceled, and that he could take no steps to assist us in collecting the money due under this policy if there was any due. He said there was none due."

Not until July following was proof of loss furnished defendant. So far as the record discloses this was the first time knowledge of the loss reached the company. The policy (Michigan standard form) contained the following:

* * * "the insured shall, within sixty days after the fire, unless such time is extended in writing by this company, render to said company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following * * *

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall

have been complied with, nor unless commenced within twelve months next after the liability shall have accrued."

Mr. Fischer was called by plaintiff as an adverse witness under the statute; as to his authority to act for the company, he testified:

"We have a general insurance agency and we place insurance business in other companies other than this Northern Insurance Company. We have a general agency for about six different companies. We have not had other companies in our agency for whom we do business other than these six. Our business in connection with these companies is issuing their policies and collecting their premiums and our agency is a general agent for the companies in that respect. * * * Our office and our agency had authority only to issue policies, accept premiums and refund for premiums. We were licensed by the insurance department of the State of Michigan for that purpose."

At the close of the proofs both parties asked for a directed verdict. One was directed for plaintiff and judgment followed.

FELLOWS, J. (*after stating the facts*). There are numerous assignments of error but we think but one phase of the case need be considered. That the provisions of the Michigan standard form of policy which we have quoted are valid and enforceable is not questioned. Plaintiff, however, claims that the statement to his agent by Garessi and the statement of Fischer to his attorney amounted to a denial of liability by the company, hence a waiver of proof of loss, and the trial judge so held. But waiver, in order to bind the company, must be by the company through its officers or agents acting within the sphere of their authority. If the agents who attempt to speak for the company bear no authority from the company, either express or implied or by holding out, their acts beyond their authority do not bind the company. That

the general rules of agency apply to insurance cases has been pointed out by this court on numerous occasions. We pass without comment the fact that the talk with Fischer did not occur until several months after the date fixed in the policy for filing proofs of loss. Fischer was the local agent and Garessi was one of his employees. Neither of them so far as this record discloses had authority either general or special to adjust losses.

The holding of the learned trial judge that the local agent of an insurance company who has authority to solicit business, write and issue policies and collect premiums, may for his company waive the clauses of the policy above quoted, is in conflict with at least two cases in this court. The equities of the plaintiff in the case of *Barry & Finan Lumber Co.* v. *Insurance Co.*, 136 Mich. 42, were there noted; they were much stronger than in the instant case. In that case the local agents had stated that they were authorized to adjust the loss, but this court recognizing the well settled rule that an agent's authority may not be proven by his statements held that authority to adjust the loss had not been established, and held (we quote from the syllabus):

"The statements and acts of a local agent of a fire insurance company, authorized to receive proposals for insurance and countersign and deliver policies, cannot be received to show that he was authorized to adjust losses for the company, or had power to waive a provision of the policy requiring action to be commenced within 12 months from the time of the loss."

Mr. Justice HOOKER, who wrote for the court, reviewed the authorities at length. This case was followed in *Fisk* v. *Insurance Co.*, 198 Mich. 270. These two cases must be taken as settling that authority of a local agent to solicit business, write and issue policies of insurance and collect premiums, does not

carry with it authority to adjust the loss. The authorities relied upon by plaintiff are not to the contrary. Plaintiff's counsel cited upon this branch of the case the following: *Improved Match Co.* v. *Insurance Co.*, 122 Mich. 256; *O'Brien* v. *Insurance Co.*, 52 Mich. 131; *Young* v. *Insurance Co.*, 92 Mich. 68; *Morgan* v. *Insurance Co.*, 130 Mich. 427; *Bird* v. *Insurance Co.*, 218 Mich. 266; *Fisk* v. *Insurance Co.*, 192 Mich. 243; *Popa* v. *Insurance Co.*, 192 Mich. 237; *Johnson* v. *Insurance Co.*, 224 Mich. 493. An examination of these cases discloses that they do not present the question now before us. In the *Match Company* and *Johnson Cases,* the denial of liability was by the company itself. In all the other cases, six in number, the waiver was by the adjuster of the company. Manifestly an agent authorized to adjust the loss carries not only the authority to adjust the amount to be paid but also carries as a part of and incidental to such power the authority to refuse any payment at all, to deny liability. His denial of liability is the denial of liability for his principal and waives proof of loss. But a local agent, authorized only to write insurance, having no authority to adjust the loss, does not carry with him the power incidental to and a part of the authority to adjust. Having this in mind, it will be seen that our holdings are in no way inconsistent.

As the material facts are not in dispute and a new trial would be of no avail to plaintiff, one will not be granted.

Judgment reversed.

CLARK, SHARPE, STEERE, and WIEST, JJ., concurred with FELLOWS, J.

BIRD, J. (*dissenting*). Mr. Justice FELLOWS concludes that this case should be reversed because the local insurance agent had no authority to make state-

ments which would bind defendant and, therefore, could waive nothing. It does not appear to me that that question need be considered. It was the position of plaintiff that defendant, by canceling the policy, had waived the proofs of loss. Fischer testified that he was a member of a firm that was general agent for the defendant company, and that Garessi was employed by the firm as a solicitor.

Plaintiff spoke and understood English so imperfectly that he induced Frank Ciotta to visit the office of the company and learn why it did not pay the loss. He did so, and saw Garessi, and was informed by him that the policy had been canceled. This was within two weeks after the fire. Mr. Justice FELLOWS thinks Garessi had no power to make statements which would waive any right of the company. Perhaps he did not, but he did not attempt to waive any rights of the company. He simply stated a fact, namely: That the policy had been canceled. It was not necessary that Garessi should have any particular authority, or be any particular officer, to state a fact. A stenographer in the office of the company might have stated that if she knew it. Garessi did not undertake to say whether or not the company would pay; he did not attempt to say what the company would do; he did not attempt to exercise any discretion with reference to defendant's liability. He simply stated a fact which appeared to be within his knowledge. And subsequent events showed that Garessi was right about it because the company afterwards defended on that ground and gave notice of that defense in its plea.

Now, when plaintiff learned of this fact, that the defendant had canceled the policy, did he have a right to infer that the company denied liability? If he did, then it was unnecessary for him to do the useless work of preparing proofs of loss. If the company

canceled the policy on the ground that it was not liable, what use would it have for proofs of loss?

"So where the conduct of the insurer is such as to render the furnishing of proofs useless or unavailing or impossible, they are deemed waived."   26 C. J. p. 397.

It appears to me that plaintiff had the right to infer from the fact that the defendant had canceled the policy, that it denied liability thereon.   The waiver did not arise from what Garessi told Ciotta, but arose from the fact that defendant had canceled the policy. That plaintiff did have the right to infer waiver from a denial of liability is sustained in *Improved Match Co.* v. *Insurance Co.*, 122 Mich. 256.   In that case after the fire the plaintiff wrote the company demanding payment.   It replied that the policy was canceled. Afterwards, when sued, it made it one of its defenses that no proofs of loss were delivered to it, and this court held that under such circumstances no proofs of loss were necessary, and said in part:

"Counsel for defendant contend that the court should have directed the verdict in favor of the defendant because of the failure of the plaintiff to make and serve proofs of loss.   It appears that, after the fire, the plaintiff wrote the defendant about it, and that it was a total loss.   The defendant company immediately answered that it had canceled the policy, and called attention to stipulations in the policy in reference to running after 10 o'clock at night, and added: 'I am informed that your establishment burned at about 3 o'clock in the morning, and while it was being operated.'   This was virtually a denial of liability, and no proofs of loss were necessary to be made."

The question as to whether plaintiff had a right to infer a waiver from the fact that the company had canceled the policy was perhaps a question for the jury, but as both parties asked for a directed

verdict it was up to the court to decide that question of fact.

The policy was taken out to protect both plaintiff and the mortgagees.    Plaintiff paid the premium and afterwards suffered a loss, and now should receive the promised indemnity.

The judgment should be affirmed.

MCDONALD, C. J., and MOORE, J., concurred with BIRD, J.