COHEN v. LONDON GUARANTEE & ACCIDENT CO., LTD., OF
LONDON, ENGLAND.

1. INSURANCE—HOLD-UP INSURANCE—PROOFS OF LOSS.
   Affidavits of insured and his hotel manager, prepared by repre-
   sentative of insurer after full investigation, fully explaining
   manner of hold-up and amount of loss incurred, and signed
   within time limit in hold-up insurance policy for proofs of
   loss, *held*, sufficient proof of loss, in absence of demand by
   insurer for further information.

2. INNKEEPERS—LIENS ON GUESTS' EFFECTS IN HIS POSSESSION.
   Hotelkeeper under common law and irrespective of innkeepers'
   act (2 Comp. Laws 1915, § 6947 *et seq.*) has lien on effects
   of guests in his possession and control to amount of reasonable
   charges for their entertainment.

3. INSURANCE—GUESTS' EFFECTS ON WHICH HOTELKEEPER HAS LIEN
   ARE WITHIN HOLD-UP POLICY.
   Hotelkeeper having lien on money and jewelry of guests in his
   possession to secure payment of his lawful charges, they are
   "collateral for indebtedness to assured," within meaning of
   hold-up insurance policy issued to him.

4. APPEAL AND ERROR—EVIDENCE—ADMISSION OF RECEIPTS NOT
   HARMFUL.
   In hotelkeeper's action on hold-up insurance policy, admission
   in evidence of receipts, taken from guests with whom he
   settled for their loss on direction of insurer's representative,
   *held*, not harmful to insurer.

5. INSURANCE—EVIDENCE—ADMISSIBILITY.
   In hotelkeeper's action on hold-up insurance policy, testimony
   as to value of stolen jewelry belonging to guests, while it
   might not have been very persuasive, was admissible.

6. SAME—INSURER ADMITTING PARTIAL LIABILITY AND DENYING
   FURTHER LIABILITY ON ONE GROUND MAY NOT DEFEND ON AN-
   OTHER GROUND.
   Although burden of proof, in action on hold-up insurance policy,
   is on insured to establish that he has suffered loss by hold-up,
   which obviously means real, and not fake hold-up, where, be-

fore trial and after full investigation, insurer admitted liability on one item and denied liability on others as not within terms of policy, it may not defend on ground that hold-up was faked.

7. SAME—ADJUSTER MAY BIND INSURER BY ADMISSION OR DENIAL OF LIABILITY.

Insurance adjuster has authority to bind insurer by admission or denial of liability; rule that agent authorized to solicit insurance, etc., may not bind insurer thereby not being applicable to adjuster.

Error to Van Buren; Warner (Glenn E.), J. Submitted April 9, 1929. (Docket No. 61, Calendar No. 34,255.) Decided June 3, 1929.

Assumpsit by Irving I. Cohen against the London Guarantee & Accident Company, Limited, of London, England, on a policy of insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*David Anderson,* for plaintiff.

*G. F. Classon* and *W. J. Barnard,* for defendant.

Plaintiff operates a summer hotel of considerable size at South Haven. During the season of 1927, defendant issued to plaintiff a so-called "hold-up" policy, indemnifying him from loss by hold-ups at the hotel. It contained the following clause:

"The company shall not be liable for: (a) Loss of or damage to any property, unless it is owned by the assured or held by him in trust or on commission or as collateral for indebtedness to the assured, or is held by the assured in any capacity that would render him liable to the owner thereof for such loss or damage as is covered hereby."

The policy also contained the usual provision for proof of loss. This action is brought on this policy, and the claim of plaintiff, sustained by testimony, is that in the early hours of August 7th, there was a hold-up at the hotel, the safe rifled, over $1,500 of plaintiff's money taken, a considerable sum of cash left in the safe by the guests, and several thousand dollars' worth of jewelry, also owned by the guests and left by them in the safe, were taken and gotten away with by the robbers. The robbery was at once reported, and the testimony of the cashier of plaintiff tends to show that shortly after it occurred the general agent and another representative of defendant came to the hotel, were furnished the book containing the entries showing what was in the safe, and went over it fully, and dictated to him, and he made in duplicate on the typewriter a list showing the items stolen, one of which copies he claims to have furnished them and the other he produced in court. He also claims that they instructed him to settle with the guests and to take their receipts, which he did. On August 31st, the adjuster of the defendant was at the hotel and again went over the matter with the cashier fully. He testifies:

"We checked over his books best we could and again rehearsed and rehashed the method in which this robbery was supposed to have taken place. And at that time Mr. Lewis prepared the list showing the amount of hotel cash that was lost, and another list showing the names of the guests who had lost jewelry and who had lost money and who had money deposited for safekeeping in the safe at the time of the robbery. It took him some little time to prepare that and as I recall it he gave it to me sometime after lunch."

On September 30th, the plaintiff and his general manager went to the Chicago office of defendant, and there signed and swore to affidavits prepared by a representative of defendant fully explaining the manner of the hold-up and the amount of loss incurred.

Some of the questions which defendant discusses in its brief would be troublesome had not plaintiff eliminated them from the case. Plaintiff recovered for two stolen items and two items only. They were (1) cash owned by plaintiff, and (2) the amount of plaintiff's innkeeper's lien at common law upon the stolen cash and jewelry of his guest left for safe-keeping, not exceeding the value thereof. This eliminated from the case any question of the liability of plaintiff to his guests for stolen jewelry or cash under the circumstances, and whether under the innkeeper's act (2 Comp. Laws 1915, § 6947 *et seq.*) he has a lien upon the articles named for the amount due him.

FELLOWS, J. (*after stating the facts*). We are satisfied that, eliminating any question of waiver and the details of other information furnished defendant from time to time by plaintiff and his employees, the affidavits made by plaintiff Cohen and his general manager Greenberg on September 30th complied with the requirement that plaintiff furnish proof of loss. They were made out within the 60 days' limit in the policy. They recited the facts about the hold-up and what was procured by it, and must have been deemed sufficient by defendant's representative who made them out, because he did not require any further information. See *Kavanagh* v. *Insurance Co.*, 244 Mich. 391.

As we shall presently see, defendant's adjuster, after fully investigating the facts, came to the conclusion that plaintiff was entitled to recover item (1), the cash belonging to plaintiff and stolen from the safe, so announced to plaintiff, and offered to pay such item on the spot, but denied that defendant was legally liable for item (2). This, therefore, necessitates the determination of two questions, i. e., (a) Did plaintiff have a lien on the effects of his guests in his possession and control at the hotel? and, if so, (b) Did the provision of the policy quoted render defendant liable for their loss in the hold-up?

Plaintiff clarifies the atmosphere by claiming that, irrespective of the innkeeper's act, he has a lien at common law on the effects of his guests brought to the hotel. In this claim plaintiff is unequivocally sustained by R. L. Polk & Co. v. Melenbacker, 136 Mich. 611. In that case one Boyd, an employee of plaintiff, had accommodations at defendant's hotel. He brought with him to the hotel property of his employer used in soliciting business. It was held that the innkeeper had a lien on this property. Mr. Justice GRANT, speaking for the court, said:

"Mr. Boyd was in lawful possession of the property which he took to the defendant's hotel as a guest. He was plaintiff's agent, and intrusted with the property for the purpose of assisting him to carry on business for his principal. Being, under these circumstances, lawfully in possession, the defendant had a lien upon the property for the amount due for the keeping and accommodation of the guest."

It was also held that this lien existed at common law and independent of the innkeeper's act above cited. In 32 C. J. p. 568, it is said:

"Both at common law, and under statutory provisions, an innkeeper is entitled to a lien on the effects of guests for the amount of the reasonable charges for their entertainment. This extraordinary privilege corresponds to, and is concurrent with, the extraordinary liabilities which the law imposes on the innkeeper. The lien is not created by a contract, but by law; the innkeeper, being obliged by law to receive the guest, is given the lien by the law as a protection. Consequently an innkeeper may maintain his lien even against a guest who is not legally capable of making a binding contract."

And on page 570, it is said:

"The lien of an innkeeper extends generally to all property, and each article thereof, brought by the guest to the inn."

Now, if plaintiff had a lien on the money and jewelry of his guests to secure the payment to him of his lawful charges, and we so hold, and it was in his possession in the office safe, and the proofs so show, it is quite difficult to perceive what system of reasoning we should indulge to reach the conclusion that it was not "collateral for indebtedness to the assured" and within the terms of the policy. The policy was issued to indemnify plaintiff from loss and ought not to receive so strained a construction as to defeat its purpose.

Some questions of more or less importance arose during the introduction of testimony. As noted, the cashier testified that defendant's representative directed him to settle with the guests and take their receipts. This he did, and some of the receipts were received in evidence. Having been taken by direction of defendant, we do not perceive that it was harmed by their reception in the case. While the testimony of value of the jewelry might not have

been very persuasive, it was admissible. *Printz* v. *People*, 42 Mich. 144 (36 Am. Rep. 437); *Kavanagh* v. *Insurance Co., supra.* Defendant's counsel was refused the right to offer proof which tended to show that the hold-up was a "fake," an "inside job," although he offered no witnesses on the subject. He was limited, although not materially so, in cross-examining plaintiff's witness on the subject. The objection to the testimony, which was sustained, was that under *Molnar* v. *Insurance Co.*, 242 Mich. 41, and the rule and authorities there cited, defendant was bound to give notice of such defense under the plea of the general issue. Upon this record the ruling was right, but the ground of objection was not. The burden rested on plaintiff to establish that he had suffered loss by a hold-up, and obviously this means a real, not a fake, hold-up. It was admissible under the general issue to adduce testimony tending to show that a real hold-up had not taken place. But before the suit was started, defendant had committed itself to its line of defense. It had unequivocally admitted its liability to the plaintiff for the sum of $1,558.45, the amount of plaintiff's cash taken from the safe, and as unequivocally refused to pay any more because it claimed it was not legally liable so to do. Defendant's counsel correctly contends that we are committed to the rule that an agent authorized to solicit insurance, sign and deliver policies, and collect premiums does not carry with such agency the power to bind the company by admissions or denial of liability. Among the cases so holding, see *Barry & Finan Lbr. Co.* v. *Insurance Co.*, 136 Mich. 42; *Fish* v. *Insurance Co.*, 198 Mich. 270; *Gambino* v. *Insurance Co.*, 232 Mich. 561. But the authority of an adjuster is far different. In the last-cited case, it was said:

"Manifestly an agent authorized to adjust the loss carries not only the authority to adjust the amount to be paid but also carries as a part of and incidental to such power the authority to refuse any payment at all, to deny liability. His denial of liability is the denial of liability for his principal and waives proof of loss."

In the instant case the adjuster was a witness. He testified:

"I told him that. I told him that all we owed him under the policy, in our opinion, was $1,558.45, and nothing else, and I offered to pay it. Had offered all the time to pay it. Absolutely. I had the authority from the company to say that. He claimed that we owed him for the money lost by the guests. Mr. Cohen contended strenuously the liability of money lost or deposited by the guests. Oh, I can't recall all that he said. We talked for perhaps two hours, Mr. Anderson. He contended—the gist of it was that he was entitled to the money which he had to pay to his guests, or owed him for board, or money that he had that they had left there for safe-keeping; that they owed him for board, yes, I think that was mentioned. I think he contended that. The authority was this: We owed him $1,558.45, and my statement was that 'we will pay it'—today, if you want it, 'and as to the rest of it we deny liability,' absolutely, and 'deny that we owe you any more than that amount,' deny that the rest of it comes under the contract at all, and refused to pay any more based on that reason—the reason was that we did not consider that we owed it. That's a good reason."

And all the other testimony on the subject agrees that the adjuster—authorized to speak for the company—admitted a liability for $1,558.45 and denied that the contract of insurance covered anything else.

Now, it is a recognized rule in insurance and other cases that, where defendant has fully investigated the facts, or in cases of sales of property where defendant has fully inspected the property and rests refusal to pay on a definite ground, he may not on the trial be heard to say that his refusal is based on another ground. In *Towle* v. *Insurance Co.*, 91 Mich. 219, it was said by Justice MONTGOMERY, speaking for the court:

"Good faith required that the company should apprise plaintiff fully of its position, and, failing to do this, it estops itself from asserting any defense other than that brought to the notice of the plaintiff."

See, also, *Smith* v. *Insurance Co.*, 107 Mich. 270 (30 L. R. A. 368); *Douville* v. *Insurance Co.*, 113 Mich. 158; *Providence Jewelry Co.* v. *Bailey*, 159 Mich. 285; *Harvard Co.* v. *Himmelein*, 226 Mich. 691.

The other assignments of error have been examined, but do not merit discussion.

The judgment will stand affirmed.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.