## ROBINSON v. UNION CENT. LIFE INS. CO.

### (Circuit Court, N. D. Georgia. April 10, 1906.)

### No. 1,464.

1. INSURANCE—ACTION ON LIFE POLICY—QUESTIONS FOR JURY.

Where, after the signing and forwarding of an application for life insurance for the benefit of the applicant's son, which in the usual course would have become effective as a contract of insurance only upon its acceptance by the company and the issuance of a policy thereon, the son, at another place, and without the knowledge of his father, paid the premium to a general agent of the company, and took a binding receipt, which such agent was authorized to issue, and the effect of which was to make a contract of insurance from its date, provided the application was subsequently accepted, the questions whether such insurance was in fact effected by the father, through his son as his agent, or by the son acting in his own behalf, and whether the act of the son was within authority given him by his father to represent him in the matter, were both questions for the jury.

2. SAME—PAYMENT OF PREMIUM.

Where a general agent of a life insurance company, authorized to collect premiums and to retain his commissions therefrom, credited an applicant for insurance with one-half the first premium, to which he was entitled as a commission, and took the applicant's note for the remainder, which he discounted at a bank before the applicant's death, the entire amount of the premium being credited to the company by the agent as cash in his hands, such transaction constituted a payment of the premium binding on the company.

3. EVIDENCE—PRESUMPTION FROM FAILURE TO PRODUCE.

Where evidence is open to two interpretations, and it is within the exclusive power of one party to show what the truth is, the failure of such party to produce the evidence will authorize the jury to presume that, if produced, it would be unfavorable to him.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 95–97.]

4. INSURANCE—EVIDENCE OF ACCEPTANCE OF APPLICATION—PRESUMPTION FROM FAILURE TO PRODUCE EVIDENCE.

In an action on a contract of life insurance, alleged to have been made by the acceptance by defendant of an application before the death of the applicant, the only evidence of such acceptance introduced by plaintiff was the application itself, stamped to show its receipt by the company, and upon which, opposite the word "approved," the name of defendant's president had been written and erased by drawing a line through it, and the name again written opposite the word "declined." It was admitted that such erasure and second signature were made after the applicant's death was known. Held, that such entries were sufficient to justify the submission of the question of acceptance to the jury, and that, in the absence of any evidence thereon by defendant, they were authorized to presume that such evidence if produced would be unfavorable to it in determining the meaning and effect of the indorsements on the application.

At Law. On motion to set aside verdict and grant a new trial.

Evins & Spence and King, Spalding & Little, for plaintiff.
Maxwell & Ramsey and Henry C. Peeples, for defendant.

NEWMAN, District Judge. This case, as it finally went to the jury, was a suit by Roby Robinson to recover from the defendant company on a contract of insurance claimed to have been made by the company with William F. Robinson on his life for the benefit of his son, Roby Robinson, the plaintiff. The suit appeared by the language of the declaration during the trial to be on a contract of insurance made by Roby Robinson on the life of his father, William F. Robinson. The court being of opinion, and so indicating, that Roby Robinson did not have an insurable interest on the life of his father under the evidence submitted, an amendment was filed without objection, giving the suit the character indicated, when it finally went to the jury; that is, a suit on a contract of insurance claimed to be shown by an application made by William F. Robinson to the insurance company for $5,000 of insurance, a binding receipt given by William F. Leary, general agent of the company, to Roby Robinson in Atlanta, and certain entries on the application for insurance, showing, as claimed, approval and acceptance of the risk before the death of the insured William F. Robinson.

The first question made on this motion for a new trial is, was this an application for insurance by William F. Robinson on his life for the benefit of his son, Roby Robinson, or was it really an effort on the part of Roby Robinson to obtain insurance on his father's life for his own benefit? And, as somewhat connected with this, the further question, did Roby Robinson have the right to represent his father in taking the binding receipt from Leary after the application had been signed by William F. Robinson?

On the question of whether this was an application for insurance by William F. Robinson on his life for the benefit of his son, or an application for insurance by Roby Robinson on his father's life for his own benefit, the court instructed the jury as follows:

"If, taking the whole transaction together, you believe that this was an effort by Roby Robinson to obtain insurance on the life of his father, as distinguished from an application by William F. Robinson for insurance for the benefit of his son, then the plaintiff would not be entitled to recover in this action. Independently of the question as to whether or not Roby Robinson had an insurable interest in the life of his father, William F. Robinson, the case is not put upon that theory or upon that ground, and it is inconsistent with the real theory on which the case is presented to you; that is, that this was insurance effected by William F. Robinson acting through himself, or through his son as his agent, for the benefit of his son. Insurance of that kind would not be obnoxious to the law, while insurance of the other kind might, or might not be, in accordance with the facts; but such a case is not presented to you now. You must believe, in the first place, that the taking of the binding receipt and all the circumstances connected with it was an effort on the part of William F. Robinson to obtain insurance on his life for the benefit of his son, which he might properly do, although the premiums were to be paid by the son, as is claimed in this case."

William F. Robinson lived in Eufaula, Ala., and it was there that the application for insurance was signed, and it was also there that the physical examination was made by the company's local physician. Roby Robinson was in Atlanta at the time he took the binding receipt from Leary. The contention by counsel for the insurance company is that the taking of the binding receipt made a material change in the contract. It is argued that an ordinary application for insurance would have gone

on to the company, and the insurance, if accepted, would have commenced from the date of the policy, in the ordinary and usual way; but that the binding receipt made a contract of insurance dating from the date of the receipt, if the application should subsequently be approved and accepted. On this question Roby Robinson testified as follows:

"My father did not say to me, 'Now, my son, whenever you make any transactions with an insurance company you are acting as my agent'—not in those words. He told me to go ahead and get the insurance. When I had these negotiations with Leary, I told him this policy was to be taken out and used as collateral on this loan. I don't remember that I went into any of the details at all with Mr. Leary about agency. I discussed the matter pretty thoroughly with him, and I may have told him I was his agent. I may not have put it in those words. The manner I was acting was as his agent. I don't know that I ever disguised the fact that I was his agent, but I was authorized to go ahead and—I understood I was acting for him. I don't think I ever mentioned in the progress of this case before to-day that I was my father's agent. The subject of this binding receipt did not come up on this interview with my father, and it never did. So far as I know, my father died in ignorance of the binding receipt. I did not send the binding receipt down to him for his signature. It may be the bankers knew about the binding receipt, and they communicated it to him, because I was in communication with them to hold the matter up. I don't positively know. I certainly did not contemplate sending that binding receipt to my father for his signature. I never heard of a binding receipt until Mr. Leary offered it to me in my office that morning. So when I was talking about insurance with my father, I did not know that any such contract as I am now suing on could be made."

Roby Robinson had previously testified that while on a visit to Eufaula just before this transaction, his father had authorized him to take out life insurance, which was to be used as collateral at a bank to which his father owed a note, and on which Roby Robinson was indorser, and that he was not sure that his father authorized $5,000 of insurance, but he probably did authorize it.

The other question involved on this branch of the case is as to the right of Roby Robinson to represent his father in taking the binding receipt. On that subject the court instructed the jury as follows:

"It is denied on the part of the defendant insurance company that the evidence shows that Roby Robinson was authorized by his father to act as his agent or representative in accepting this binding receipt, or in making that transaction with William F. Leary, the company's agent. When one person is authorized by another to act as his agent to carry on negotiations, or to make a contract of a particular kind, then the agent is authorized to do whatever may be reasonably necessary in order to effect and carry out the matter as to which his agency is created. He cannot go beyond the scope of that which was contemplated in the authority given him, but he may do what is reasonably necessary and proper to accomplish the matter intrusted to him as agent. I think it should be left to you to say, and I do leave it to you to say, whether the action of Roby Robinson in connection with the binding receipt, under the evidence in this case, was as the representative of his father, and was within the authority granted him by his father, under the evidence. Of course, it depends upon the evidence of Mr. Robinson himself; but it is for you to say, did he act in this matter of the binding receipt on behalf of his father, and was he authorized to do so?"

I think both of these instructions were proper, and were fair to the insurance company. The jury, in order to find a verdict for the plaintiff, necessarily found both of these issues in his favor, and I see no reason for disturbing the verdict on this ground.

The next question is as to the payment of the first year's premium. The total amount of the premium for the first year on the policy for which application was made was $247.85. The binding receipt taken by Roby Robinson from Leary indicated the payment of this entire amount. The evidence showed that the transaction between Leary and Roby Robinson was as follows: Leary went to Robinson, and desired him to close up the transaction of insurance on his father's life by taking a binding receipt and paying the premium on that day. Leary represented to Robinson that he had a commission on the first year's premium and a bonus on business, and he seems to have made a gift of his commissions, and bonus, amounting to one-half the premium, to Roby Robinson. Robinson told Leary tht he did not have the cash on the day he was approached by Leary to take the binding receipt and close the matter up, but he gave to Leary, and Leary accepted, a note due in 90 days for $123.93, with interest from date at 8 per cent. per annum, and he told Leary that he could use the note and get the cash at the Atlanta National Bank, which Leary did. Counsel for the insurance company earnestly contend that this transaction would not bind the company. On this subject the court instructed the jury as follows:

"You would then proceed to determine the next question in the case, which would be, Was the premium paid? It would be necessary that the premium should have been paid. If in cash and commissions due Leary the company received the full amount of the premium before William F. Robinson died, that would be sufficient. If Leary received the proceeds of the note given by Roby Robinson, discounted before William F. Robinson's death, and you are satisfied that the cash thus received and Leary's commission made the full amount of the premium, and had gone to the credit of the company as such premium in Leary's hands before William F. Robinson died, this would be sufficient. But the evidence must go to this extent."

Leary was the general agent of the insurance company. He must have received in cash one-half the amount of this annual premium, and the other half the evidence I think shows satisfactorily that he was entitled to as commissions and bonus. I thought the instruction given to the jury on this question was sound, and still think so.

The next ground upon which counsel have urged that this verdict should be set aside and a new trial granted is that the court erred in its instruction to the jury on the subject of the presumption arising from the failure on the part of a party to a cause to introduce evidence in the exclusive possession of such party, which would tend to throw light on a matter under investigation. The defendant moved the court to direct the jury to return a verdict in its favor, for the reason, among others, that there was not sufficient evidence upon which the jury could find that this application of William F. Robinson was approved and accepted by the insurance company. This issue turned upon certain entries made by stamps and in writing on the application. One stamp showed that the application had been received by the company January 5, 1898. Another stamp showed that it had been received by the medical department on the same day, January 5th. The application seems undoubtedly to have been in the possession of the president of the company on January 22, 1898. The president's name had been written

in the blank in the application opposite the word "approved," and above it were certain letters, abbreviations, apparently, of words about the meaning of which counsel differed, and really about the letters themselves. The name of "Jno. M. Pattison," president of the company, opposite the word "approved" had been erased by a line run across it, and opposite the word "declined," in a blank space below the word "approved," the name of "Jno. M. Pattison" was written. It was conceded in defendant's answer and by defendant's counsel in open court that this erasure of the president's name was made, and the signing of the same opposite the printed word "declined" below was written, after the death of William F. Robinson, and after information of his death had been received at the home office of the company. The court overruled the motion to direct a verdict for the defendant upon the ground that under the facts stated it could not say to the jury, as matter of law, that there had not been an approval and acceptance of this risk, but held that it was a question of fact for the jury to determine. The defendant offered no evidence, and the case went to the jury on the evidence submitted by plaintiff.

Upon the ground of presumption as applicable to this state of facts, the court instructed the jury as follows:

"There is a rule of law which is invoked by counsel for plaintiff in this case, which is to the effect that where it is in the exclusive power of a party to a suit to produce evidence which would throw light upon and clear up a matter under investigation, and it fails to produce such evidence, such failure to produce may afford a presumption that it would cut against and hurt it if offered. It is for you to say how far this rule would be applicable in this case. Counsel for plaintiff say that it was in the power of the defendant company to produce evidence to show exactly what did transpire in the home office with reference to this application for insurance before the death of William F. Robinson, and from its failure to offer any evidence on the subject they have a right to argue and to urge that any such evidence would not have been favorable to it. This rule of law, if used by you, gentlemen, should be used in construing and to throw light upon the evidence offered by the plaintiff in the case, and to determine the weight to be given the evidence."

Immediately following this, the court proceeded as follows:

"It is not incumbent on a defendant to offer evidence until the plaintiff has made out a case authorizing a recovery. The burden is on the plaintiff to show to your reasonable satisfaction everything necessary to authorize a recovery, under the rules of law I have given you."

And also afterwards in the charge, as follows:

"I also, in connection with the matter to which I have called your attention (namely as to presumptions) charge you that in arriving at a verdict the jury from facts proven, and sometimes from the absense of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved."

I think the effect of these instructions was to state to the jury that where evidence was subject to two interpretations, and it was in the exclusive power of one party to show exactly what the truth was, that from the fact that it failed to produce this evidence the jury might presume that any such evidence if produced would be unfavorable to it. Such I believe to be the correct law on this subject. The presumption arising from the failure of a party to produce evidence exclusively in

144 F.—64

his possession may be used, as I understand it, to throw light upon evidence already in; not to make evidence.

There was enough in these entries upon the application, in the opin-. ion of the court, to justify its going to the jury to determine whether there had been an approval and acceptance of this risk before William F. Robinson died; consequently, in construing these entries on the application, and determining what had occurred in the home office as to approval and acceptance, the jury might, if they saw proper, use this presumption that evidence in its exclusive possession not produced by it would be unfavorable to it if produced.

In Wigmore on Evidence, vol. 1, § 285, p. 368, the rule on this subject is stated as follows:

"The consciousness indicated by conduct may be not an indefinite one, affecting the weakness of the cause at large, but a specific one, concerning the defects of a particular element in the cause. The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions, and they are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted. The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause. Ever since the case of the chimney sweeper's jewel, this has been a recognized principle"—quoting the case of Armory v. Delamirie, 1 Strange, 505, and other authorities.

Among the other authorities cited by the author is an expression of Lord Mansfield, C. J., in Blatch v. Archer, Cowp. 66:

· "It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other to have contradicted."

The court was careful in this case to restrict the use of this rule in construing, "and to throw light upon the evidence offered by the plaintiff in the case, and to determine the weight to be given the evidence"; and the instruction given with this restriction, and with the further qualification that the defendant is not required to offer evidence until the plaintiff has made out a case to the reasonable satisfaction of the jury, I think was proper. The defendant further says, as I understand the contention, that even if this instruction was correct, that the evidence and any presumption which could properly be raised was insufficient to justify the jury in finding that the application of William F. Robinson was approved and accepted by the insurance company. On this question, as to whether the application was "approved and accepted" (using the language of the binding receipt) by the company, the court instructed the jury as follows:

"It would be necessary for you to believe that the defendant company, acting through its proper officers, approved and accepted this application for insurance, before the contract would become effective in accordance with the provisions of the binding receipt. You must believe that the proper officers of the defendant had found the risk satisfactory and had accepted the same,

before the death of William F. Robinson. If the application was still pending for further action, and had not been passed upon in such a way that it had been determined to be a satisfactory risk and accepted, there could not be a recovery here. In the opinion of the court the terms 'approved' and 'accepted' mean this: The word 'approved,' that after such an examination of the application and the surrounding circumstances as were desired by the proper officers of the defendant company the risk had been deemed a satisfactory one, and then that some action had been taken indicating an acceptance of the risk. In the opinion of the court it would not be necessary that a policy should have been issued, but it would be necessary for you to believe from the evidence in the case that such action had been taken by the company by way of approval of the risk and of acceptance of the application, as indicated that all that was left to be done was to carry the same into effect in the usual and proper way. It would not be necessary either, in the opinion of the court, that notice of this acceptance should have been conveyed to William F. Robinson or to Roby Robinson, provided you believe that the company had taken such action on its part, through its proper officers in that respect, as that it amounted, not only to an approval, but to an acceptance of the risk."

As has been stated, the court was of the opinion that the entries upon the application were sufficient to carry the case to the jury on the question of approval and acceptance of the risk, and particularly the erasure of the president's name opposite the word "approved," and the entry of the same opposite the word "declined," after they knew of the death of William F. Robinson. Having determined that this was a question for the jury, and that there might be a view taken of the entries on the application for insurance as to what actually transpired in the home office by way of approval and acceptance of the risk that would bind the company, their finding on this issue should not be lightly disturbed. I thought on the trial of the case, and still think, that there might be a view of this evidence, if the jury took it, which would justify the conclusion that this risk had been approved and accepted. Particularly was this true in view of the fact that the jury might find that it was in the power of the company to have shown exactly what did transpire at the home office in connection with the receipt of this application for insurance, its transmission from one department of the home office to another, and the reason for the final erasure and re-entry of the president's name referred to. This was peculiarly, and more than any other question in the case, one for the determination of the jury, and their conclusion, reached under proper instructions, which I think were given, should not be disturbed.

Other questions were discussed, made upon the motion for a new trial, but the foregoing embraces the controlling questions in the case.

The motion to set aside the verdict and to grant a new trial is denied.