[No. 28198. Department Two. August 14, 1941.]

EDWARD W. MCFARLAND, *Respondent,* v. COMMERCIAL BOILER WORKS, INC., *Defendant,* NIEDER & MARCUS, INC., *Appellant.*[1]

[1]Reported in 116 P. (2d) 288.

82

*Preston, Thorgrimson & Turner* and *Meier & Meagher*, for appellant.

*Vanderveer, Bassett & Geisness*, for respondent.

SIMPSON, J.—Action was instituted to recover damages from defendants on account of injuries suffered by plaintiff when he fell from a grating inside a ship onto steel tanks some twenty feet below.

The amended complaint alleged that defendant Nieder & Marcus, Inc., purchased the engine in the

barge "Mazama"; that, to expedite its removal from the ship's hold, defendant removed certain engine room gratings and a steel stairway; that at the top of the stairway there was located a steel platform or grating; that defendant negligently failed to replace certain bolts supporting and securing the platform; and that this dangerous condition was concealed and unguarded. It was further alleged that, July 1, 1936, plaintiff, in performing a duty for Commercial Boiler Works, Inc., stepped upon the platform, which collapsed and caused him to fall onto the edge of a circular steel tank some twenty feet below; and that he was severely injured by the fall, suffering damages in the sum of fifty thousand dollars.

The answer of Nieder & Marcus, Inc., denied all the allegations of negligence contained in the amended complaint. The answer alleged that the time allowed by the statute of limitations for bringing the action had expired and that plaintiff was guilty of contributory negligence. The reply put in issue the charges made by defendant.

At the close of plaintiff's case, defendant Commercial Boiler Works, Inc., was dismissed. The case was then submitted to the jury and resulted in a verdict in favor of plaintiff and against Nieder & Marcus, Inc. Defendant Nieder & Marcus, Inc., has presented this appeal.

The assignments of error are (1) in denying appellant's challenge to the sufficiency of the evidence and motion for nonsuit, (2) in the admission of testimony, (3) in the refusal to give certain instructions and in the giving of one instruction, (4) in denying appellant's motion for judgment n. o. v., (5) in denying appellant's motion for a new trial, and (6) in entering judgment against appellant.

The pertinent facts are these: In converting the

barge "Mazama" from a self-propelled salmon cannery into a fish reduction plant, the owner sold the sixty-eight ton, triple expansion marine engine to appellant. It was the agreement that appellant would remove the engine from the boat at its own expense. Under the personal supervision of appellant's president, Benjamin Marcus, and with the assistance of three or four men, removal work commenced May 15, 1936, and was completed May 26, 1936.

For maintenance purposes, the engine was surrounded with catwalks or gratings. Attached to one of the catwalks was a steel stairway which extended upward about twenty feet on the starboard side of the engine room. The top of the stairway was connected to a platform or small grating. This platform was bolted to another catwalk which encircled a portion of the hold. To the right of the platform as approached from the stairway was a door which opened to the upper deck.

In order to move the engine from the ship, various catwalks had to be displaced. Although the testimony is in conflict, it appears that appellant removed the engine gratings, the stairway, its railing, and a supporting post. At first it was decided to displace all the upper catwalks, but later appellant concluded to leave most of them, including the above-mentioned platform, located at the head of the stairway and in front of the door. There was evidence that the bolts which secured the platform to the upper catwalk were taken out. However, it was not definitely shown that appellant did so.

After the engine had been removed, the Commercial Boiler Works proceeded to install a number of circular steel tanks and to replace the gratings. July 1, 1936, respondent, an employee of the barge owner, in order to assist in replacing the stairway stepped upon the

platform. Almost immediately thereafter, the platform collapsed, causing respondent to fall astride the rim of one of the installed circular tanks some twenty feet below.

The only warning of the platform's dangerous condition was a rope stretched across the doorway. There was some testimony that another rope stretched from the wall to the railing of the upper catwalk a few feet from where it joined the platform. As to its presence on the day of the accident, a conflict in the testimony exists. Although employees of other parties were working in the barge, it was shown that only those of appellant had anything to do with the removal of the engine catwalks, the stairway, its railing, and the supporting post.

The above stated facts are gleaned from testimony given by witnesses called by respondent for the reason that appellant did not offer evidence on its behalf, but rested after respondent had introduced his evidence.

Appellant challenges the right of the trial court to submit the case to the jury on the ground that no negligence was shown. In regard to this challenge, respondent is not only entitled to have all evidence weighed in his favor, but also every reasonable inference that is deduced from the evidence.

We are not triers of fact. Our duty extends only to ascertain whether substantial evidence was presented to the jury which would warrant it in deciding for respondent.

An examination of that evidence discloses that the removal of the engine was under appellant's sole supervision; that the engine grating, the steel stairway, its railing, and a supporting post were taken out to facilitate the displacement of the engine; and that, with the exception of two lag screws below the door sill,

the platform was left with little or no support. This evidence, together with the other facts, forms a chain of circumstances which tends to establish the further fact that two certain bolts, connecting the platform to the adjacent catwalk and furnishing additional support, were removed by appellant's employees. Hence, the insecure, and thus dangerous, condition of the platform may be attributed to appellant.

That circumstantial evidence may be used to prove negligence like any other fact is clearly established by decisions of this court. *Helland v. Bridenstine*, 55 Wash. 470, 104 Pac. 626; *St. Germain v. Potlatch Lumber Co.*, 76 Wash. 102, 135 Pac. 804; *Sweeten v. Pacific Power & Light Co.*, 88 Wash. 679, 153 Pac. 1054; *Sandanger v. Carlisle Packing Co.*, 112 Wash. 480, 192 Pac. 1005, affirmed, 259 U. S. 255, 66 L. Ed. 927, 42 S. Ct. 475; *Peterson v. Great Northern R. Co.*, 166 Wash. 538, 7 P. (2d) 963; *Nelson v. West Coast Dairy Co.*, 5 Wn. (2d) 284, 105 P. (2d) 76.

In *Sandanger v. Carlisle Packing Co.*, *supra*, plaintiff sought to recover for burns sustained by the explosion of a can of gasoline, supposedly containing kerosene, in starting a fire in a cook stove. Although the evidence did not definitely disclose that defendant made the mistake of putting gasoline in a can usually filled with kerosene, this court in passing on the question stated:

"The evidence does not disclose with certainty who filled the can or where it was filled, but there is some ground for inferring that it was filled by Stensland, the commander of the boat, from appellant's store of supplies on shore. It, in any event, seems to have been his duty to see that the can was filled. There is some evidence tending to show that appellant did not exercise due care in keeping its gasoline and kerosene receptacles in its store of supplies on shore properly designated so that their respective contents would be readily distinguishable. This evidence is not very

satisfactory, but is of some moment in view of what actually happened."

In the case at bar, that no one observed just exactly what appellant did in expediting the removal of the engine is clear. However, the evidence shows that its workmen removed the supports (the steel stairway, its railing, and a support post) from the platform upon which respondent stepped, and that no warning signs were ever placed or posted to notify other workmen of the fact that the platform was insecure.

■ Appellant next contends that, assuming negligence, it cannot be held liable for the reason that it had completed the removal work many days prior to the time of the accident, and that it owed no duty to furnish respondent a safe place in which to work. Its counsel argue:

"The breach of duty constituting negligence as far as respondent was concerned was the failure thereafter of the boat owner to furnish him a safe place in which to work, a duty which we doubt could ever be delegated to someone else, but in any event, if appellant ever owed any such duty to respondent the same ended when the power of controlling the premises and maintaining their safety ended."

In support of this argument, appellant creates an analogy between the legal relations of an independent contractor and his employer, and the legal relations in the present case between appellant and the boat owner. From this analogy, it argues that, since the legal relations of the two situations are similar, the rights and duties arising therefrom are likewise similar.

To reach its desired conclusion of nonliability, our attention is then directed to *Thornton v. Dow*, 60 Wash. 622, 111 Pac. 899, 32 L. R. A. (N. S.) 968, and similar independent contractor cases, which hold that a contractor is not liable to a third person for injuries sus-

tained on the employer's premises after the construction was completed and the work accepted.

With this analogy and reasoning, we are unable to agree. That appellant is not an independent contractor is clearly established by the facts. The evidence very definitely disclosed that appellant was merely the *purchaser* of a boat engine under a contract of sale providing that appellant must undertake the removal at its own expense.

Although appellant might be labeled a contractor, it was not an independent contractor as defined by the law. This term has acquired a specialized meaning, and should not be confused with other terms. It designates a person who, in pursuit of an independent business, undertakes to perform a specified piece of work or to render a particular service for another without submitting to control in the manner of performance. 1 Shearman and Redfield on Negligence (Rev. ed. 1941), 399-402, § 168; *North Bend Lumber Co. v. Chicago M. & P. S. R. Co.*, 76 Wash. 232, 135 Pac. 1017; *Johnston v. Seattle Taxicab & Transfer Co.*, 85 Wash. 551, 148 Pac. 900. Thus a distinction must be made between (1) a person doing work for his own *individual benefit,* as in this case, and (2) a person doing work for *another's benefit* under such conditions as not to become a servant of the other, the case of an independent contractor.

Rather than resemble the legal position of an independent contractor, the case at bar is, perhaps, more analogous to the situation of a sale by a landowner of a movable situated upon the land with an implied license to enter and remove within a reasonable time. 37 C. J. 283, § 178. See *Welever v. Advance Shingle Co.*, 34 Wash. 331, 334, 75 Pac. 863, 864, for a recognition of the principle.

That a licensee must perform the licensed acts in a

reasonable and prudent manner is established by the authorities.

"If no mode of carrying out the license is prescribed, the act must be performed in the usual and reasonable manner. The license is a protection if the licensee acts in a proper and careful manner, and under such circumstances there is no liability for damages resulting from the act, but it is no protection from damages arising from improper conduct, whether intentional or due to a failure to exercise skill or care in doing the thing which the license authorizes." 37 C. J. 286, § 185.

The case at bar must be decided upon the general principles of the law of negligence. In short, these are four: (1) The plaintiff must have sustained an unintentional invasion to a legally protected interest; (2) the defendant's conduct must have been negligent with respect to that interest; (3) the negligent conduct of the defendant must have been the proximate cause of the plaintiff's injury; and (4) the plaintiff must have exercised due care for his own safety. Restatement, Torts (1934), 734, § 281.

Applying these rules to the case at bar, it is observed that respondent sustained injuries to his legally protected interest in bodily security; that appellant's conduct in failing to leave the engine room in a safe condition and in omitting to warn others of the dangerous condition of the platform, especially when it knew of the continued presence of other workmen, was negligent with respect to respondent's interest; that such negligent conduct created an unreasonable risk of harm to respondent and was the proximate cause of his injury.

That appellant had completed its removal work prior to the time of the accident does not militate against the fact that it created, maintained, and left a dangerous condition in the engine room. See Restatement,

Torts (1934), 1033, § 386. Furthermore, it was clearly foreseeable that this condition involved an unreasonable risk of harm to others.

We conclude that, since appellant was in full charge of removing the engine, it should have left the engine room in a reasonably safe condition so as not to expose respondent to unnecessary danger. The evidence shows that the platform upon which respondent stepped was an integral portion of the iron catwalk which extended around a part of the hold, and gave the impression that it was all fastened together. There were no defects noticeable to a person standing in the position of respondent at the time he stepped on it.

In speaking of the appearance of the grating, respondent stated:

"Q. Was there anything about that little square of grating marked 'M' that looked insecure? A. There certainly was not. Q. Or dangerous? A. No, sir. Q. Had you ever been warned that it was dangerous? A. No, sir."

The evidence to which we have just referred demonstrates that the question of contributory negligence was for the determination of the jury under our rule that,

" ' . . . before a court will be justified in taking from the jury the question of contributory negligence, the acts done must be so palpably negligent that there can be no two opinions concerning them.' " *Jackman v. Seattle,* 187 Wash. 446, 60 P. (2d) 78.

Accord, *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993; *Nystuen v. Spokane County,* 194 Wash. 312, 77 P. (2d) 1002; *Fabbio v. Diesel Oil Sales Co.,* 1 Wn. (2d) 234, 95 P. (2d) 788.

Appellant presses upon us that the court erred in giving instruction No. 10, which reads:

"Whenever it develops in the course of a trial that there are witnesses available to one party or the other

who, if called, could testify to material facts favorable to such party, then if such party fails to call such witnesses, or to explain his failure so to do, you are justified in assuming that, if called, said witnesses would have testified adversely to the interest of such party."

As we have stated, appellant did not introduce evidence, but rested at the conclusion of respondent's case.

This question relative to the instruction given is set at rest by our decision in the recent case of *Wright v. Safeway Stores, Inc.*, 7 Wn. (2d) 341, 109 P. (2d) 542. In that case the defendants did not call three, or possibly five, witnesses who could have testified concerning the condition of a floor upon which plaintiff fell and was injured. The court gave the following instruction:

" 'If you find that either party of the action has failed to produce evidence under the control of such party, then the law presumes that such evidence, if introduced, would be against the contention of such party.' "

Concluding that error had been committed in the giving of that instruction, the trial court granted a new trial. Upon an appeal, we upheld that action of the court and in so doing stated:

"In not every case where a party to an action has failed to produce a witness or witnesses under his control, who could have testified to material facts favorable to such party, and has failed to explain his failure so to do, can it be inferred that the testimony of such witness or witnesses, if produced, would have been unfavorable to such party, but a court or jury may draw such inference only when under all the circumstances of the case the failure to produce such witness or witnesses, unexplained, creates a suspicion that the failure to produce was a willful attempt to withhold competent testimony."

The error in this case is more apparent than the one in the case just cited. In this case, appellant decided, as it had a right to do, not to introduce evidence.

The rule governing this situation is properly set forth in 22 C. J. 120, § 56, as follows:

"Where a party calls no witnesses, but submits his case in reliance upon the insufficiency of his adversary's evidence, no unfavorable inferences arise from his failure to call witnesses having special knowledge."

And, again, in 22 C. J. 112, § 53:

"Where defendant introduces no evidence, but submits the case on plaintiff's evidence, no presumption unfavorable to defendant arises from his failure to produce evidence peculiarly within his knowledge and possession."

Litigants must prevail upon the strength of their own case and not upon the weakness of their adversaries. To advise the jury, as was done by instruction No. 10, was, in effect, to tell it that appellant had a weak or no defense.

We find it unnecessary to discuss the asserted errors relative to the proposed instructions.

The judgment is reversed with instructions to grant a new trial.

ROBINSON, C. J., BEALS, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—The citator will disclose that, within the past few years, we have expressly overruled, or refused to follow, many of this court's old and late opinions. I did not, when it was written January 31, 1941, nor do I now, agree with the opinion in *Wright v. Safeway Stores, Inc.*, 7 Wn. (2d) 341, 109 P. (2d) 542, which is out of harmony with prior opinions of this court, in conflict with the weight of authority, and has not even the doubtful quality of age which might assure its retention for a short space of time as authority; therefore, I cannot subscribe to the statement in the majority opinion that the *question* relative to instruction No. 10 *is set at rest,* or

foreclosed, *by our* decision in the *recent case* of *Wright
v. Safeway Stores, Inc., supra.*

In *Rosenstrom v. North Bend Stage Line,* 154 Wash.
57, 280 Pac. 932, we stated the rule as follows:

"In instances where the witness is an actor in the
transaction which gives rise to the controversy, and
is presumably favorably disposed towards one of the
parties and that party does not produce him as a wit-
ness, it is presumed that his testimony, if introduced,
would be unfavorable to him. But the rule is not
applicable to strangers who are mere witnesses to the
transaction and equally within the call of the one
party as the other."

In *Wright v. Safeway Stores, Inc., supra,* which on
the facts was distinguishable from *Rosenstrom v. North
Bend Stage Line, supra,* we erroneously held that,
under the facts, the rule quoted above was not properly
invoked by an instruction like the one before us in
the case at bar.

The general rule supported by the authorities is that,
in cases where a party fails to call his own employees,
an inference arises, if they have knowledge of the facts
in issue, that their testimony would be adverse.

"Closely allied with the presumption of innocence
are the presumptions which arise against persons who
fabricate, suppress or destroy testimony. *Omnia prae-
sumuntur contra spoliatorem.* By such conduct the
presumption of innocence may be repelled and over-
come. Such conduct may not only be relevant testi-
mony to rebut the presumption of innocence, but
may be treated by the jury as evidence of guilt. The
scope of the presumption is broad. In fact, it is as
broad as the conceivable circumstances in which it
may have logical application. Necessarily, from its
very nature, the presumption varies in weight with
the nature of the conduct complained of as tending
to call for its application in a particular case, and
likewise varies with the importance of the evidence
in question; but, as indicated by the title, it applies
to falsification, fabrication, suppression or destruction

of evidence with equal weight except as varied by particular circumstances." Jones on Evidence (2d ed.), 142-143, § 83.

"That a presumption of guilt from spoliation, fabrication, or suppression of evidence has existed from time immemorial may readily be demonstrated. Expression of it is found in the Bible, where it is declared, 'Cursed be he that removeth his neighbor's landmark.' (Deut., c. 27, 17.) Other references show how the principle has been preserved in every system of laws. The familiar leading case which illustrates the nature of this presumption is that in which the goldsmith wrongfully refused to deliver a valuable jewel which had been left in his possession. The jury were instructed, in that case, that unless the defendant produced the jewel and thereby showed it to be not of the finest quality, they should find the jewel of the highest value that would fit the socket in which it was placed." Jones on Evidence (2d ed.), 145, § 84.

"Mere withholding or failure to produce evidence, which, under the circumstances, would be expected to be produced, and which is available, gives rise to a presumption less violent than that which attends the fabrication of testimony or the suppression of documents in which other parties have a legal interest; but the courts recognize and act upon the natural inference that the evidence is held back under such circumstances because it would be unfavorable. The reason and foundation of this rule has already been discussed above, and it has already been pointed out that it is of old and long-recognized standing in the law. Reference to the many cases cited in the foot notes reveals that it has been applied with a good deal of consistency, and in cases of the utmost variety. It is a grim weapon of retaliation in the hands of the innocent party and one of which the law permits him the salutary benefit in order that justice may be done. 'There being some evidence to authorize the instructions,' says the court in one case, 'the court did not err in charging the jury in the following language: "Where a party has evidence within his power and within his reach by which he may repel a claim or charge against him, and omits to

produce it, or having more certain and satisfactory evidence in his power, relies upon that which is of a weaker and inferior nature, the presumption arises that the charge or claim is well founded." ' " Jones on Evidence (2d ed.), 152-155, § 89.

"It is generally recognized that where a party relies on a weaker species of evidence than it is within his power to produce, the basis for an adverse inference is furnished. Said Lord Mansfield: 'It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other to have contradicted.' The quoted declaration has become famous, and has frequently been reiterated. In addition to which numerous other courts have made clear and excellent statements of the general rule and the reasons and principles upon which it is founded, so that, in the abstract, it may be said to be one of the best settled rules of the law of evidence." Jones on Evidence (2d ed.), 155-156, § 90.

"The scope of the rule is illustrated by the fact that it applies even to failure to combat adverse inferences. Where evidence has been introduced affording legitimate inferences going to establish the ultimate fact that the evidence is designed to prove, and the party to be affected by the proof, with an opportunity to do so, fails to deny or explain such facts, they may well be taken as admitted with all the effect afforded by the inferences." Jones on Evidence (2d ed.), 156, § 92.

"When the circumstances in proof tend to fix a liability on a party who has it in his power to offer evidence of all the facts as they existed, and to rebut the inferences which the circumstances in proof tend to establish, and he fails to offer such proof, it is only natural to conclude that the proof, if produced, instead of rebutting, would support the inferences against him, and the jury is justified in acting upon that conclusion. While it might be eminently desirable to enforce a draconic measure of punishment where evidence is withheld, the courts adhere to the qualified presumption, and call first for some general evidence from the

party sustaining the burden of proof. That slight evidence is so little, however, that the offending party is in·reality punished almost to the extent deserved. In one of the cases cited, the court said that the correct law on the subject is that where evidence is susceptible of two interpretations, and it is in the exclusive power of one party to show exactly what the truth is, .from the fact that the party fails to produce this evi·· dence the jury may presume that any such evidence, if produced, would be unfavorable to the party who might so have produced it. The presumption may be used to throw light on the evidence already in; not to make evidence. Some general evidence having been given of the existence of such evidence, the presumption from its being withheld arises at the call of the party alleging its nonproduction to his prejudice. But no presumption or inference from the nonproduction of evidence is potent enough to supply independent evidence of a fact which is wholly unproved by other evidence. In other words, there must be proof at least of some circumstances from which the existence of the facts alleged may be legitimately inferred." Jones on Evidence (2d ed.), 166-167, § 97.

"It follows from what appears above that if the failure to produce a document is accounted for by the fact that it is not under the control of the one failing to produce it, no adverse presumption can arise against him in that regard. As with the suppression or nonproduction of documents, so with witnesses. Where a witness has been summoned by both parties and attends at the trial, and is not put upon the stand by either side and does not testify in the case, it would be erroneous to raise the presumption against either one side or the other, for it would weigh equally against each. But, as revealed in the cases cited and commented upon in the footnotes, the question of equal availability of a witness not called is largely a question of fact, and various courts have regarded all manner of circumstances as bearing upon the matter. In the majority of instances, the question seems to be resolved largely by balancing probabilities, and we find the courts considering all such circumstances as the nature of the testimony which the particular witness

might be expected to give, relationship of such witness to the parties and interest or natural bias as to the outcome, the nature of attempts to procure the witness, the opportunities for procuring attendance of the witness, and prior knowledge or want of knowledge on the part of the party against whom the presumption is sought to be raised of the existence and degree of knowledge of material facts by the particular witness.

"Where the witness has not been summoned, though available to, both parties, the presumption is against him who would have been most favored by the testimony of that witness. But it is a general rule that a party against whom an inference is sought to be raised by adversion to his failure to produce evidence of any kind is entitled to an opportunity to explain his failure to produce such evidence, thereby ameliorating the inference or destroying it altogether." Jones on Evidence (2d ed.), 168-170, § 98.

"The general rule then is that a party is not to be prejudiced by his failure to call a witness who is equally available to the other party. But any inference to be drawn from failure to produce a witness available to both parties should operate against the party who has the best opportunity to know whether the testimony would be favorable and toward whom the witness is presumed to be friendly. An employee of one of the parties is accordingly not usually regarded as equally available to the opposing party. Thus in a collision case in an admiralty court, if proved facts raise a presumption of a defective lookout, the presumption is greatly strengthened by the omission of the accused vessel to put on the stand her officers and crew to explain, for example, why the lights of the other vessel were not seen and distinguished or her signals heard. The same is true, where she is competent to testify, of the wife of a party. But in a divorce suit the co-respondent is not to be regarded as an equally available witness for the other party within the general rule.

"When there is no suggestion of hostility, the fact of an actual witness to an occurrence not being called when he is within reach has been held unfavor-

able to the party not calling him. In an action by a traveler on a public street for injuries by the alleged negligence of defendant's motorman in operating one of its cars, if the defendant omits to call him as a witness, although within reach and available, the court is justified in instructing the jury that, in weighing the effect of the evidence actually introduced, they may presume that the testimony of the motorman, if introduced, would not have been favorable to the cause of the defendant." Jones on Evidence (2d ed.), 170-173, § 99.

"The burden of proof lies upon the plaintiff to establish his cause of action, and there are no circumstances which excuse him from this obligation and impose the duty upon a defendant of proving that the alleged cause of action did not exist. The plaintiff may, as we have said, rest upon prima facie case; but this requires the proof at least of some circumstances from which the existence of the actionable facts may be legitimately inferred. The defendant in a civil action always has the privilege, from the very nature of a proceeding at law, of not introducing any evidence whatsoever, but relying entirely upon the weakness of the plaintiff's evidence up until such time as the plaintiff has made out a prima facie case and the burden of going forward with the evidence has shifted. Hence it is plain, and it has frequently been recognized and affirmed, that plaintiff cannot make out his prima facie case and sustain his burden with the aid of an inference arising from failure of the other party to introduce evidence until such time as he, the plaintiff, shall have made out a prima facie case. The defendant is always entitled to rest upon the weakness of the case against him up to that point of the trial. A presumption, it must be remembered, is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. It serves only until prima facie evidence has been adduced against it. That being adduced, the presumption has spent its force and served its purpose, and the prima facie case must be met by evidence and not presumptions." Jones on Evidence (2d ed.), 178-179, § 104.

Counsel for appellant contend, with which contention the majority opinion is in accord, that there is an exception to the general rule where the party has introduced no evidence and cite as sustaining authority: *McDuffee's Adm'x v. Boston & M. R. R.,* 81 Vt. 52, 69 Atl. 124, 130 Am. St. 1019, and 22 C. J. 112, 120, §§ 53 and 56.

"Where defendant introduces no evidence, but submits the case on plaintiff's evidence, no presumption unfavorable to defendant arises from his failure to produce evidence peculiarly within his knowledge and possession." 22 C. J. 112, § 53.

"The unfavorable presumption or inference arising from the withholding of evidence is not, of course, conclusive against the party, but is merely a fact for the consideration of the jury; and such failure cannot be relied upon by the other party as affirmative proof of facts as to which the burden of proof is upon him, although it may turn the scale where the evidence is closely balanced. It has also been held that failure of one to present a fact necessary to his case when it is within his power to do so must be taken as conclusive that such fact does not exist, and the same is true where evidence as to a certain matter is introduced, and the adverse party, having it within his power to refute such evidence if it is untrue, fails to introduce any refuting evidence." 22 C. J. 112-113, § 53.

"Where a party calls no witnesses, but submits his case in reliance upon the insufficiency of his adversary's evidence, no unfavorable inferences arise from his failure to call witnesses having special knowledge." 22 C. J. 120, § 56.

The qualification of the rule is inapplicable in any event for the reason that Mr. Marcus, who testified as an adverse witness called by respondent, was cross-examined by his counsel on the precise matter in issue. Other witnesses called by respondent were cross-examined *in extenso* by appellant. It would be pure fiction to say, under such conditions, that appellant

"stood" on its challenge to the sufficiency of the evidence to sustain respondent's cause of action.

Appellant's position is in conflict with our decisions, is illogical, and is not in harmony with the weight of authority. The evidence disclosed that appellant, at the time of the trial of this cause, still had in its employ four men who dismantled the engine and gratings by whom appellant could have proved, if it were true, that they did not remove the stairway, that they left it securely supported, and that, as Mr. Marcus testified, they used the stairway each day in going to and from their work. As argued by counsel for respondent, "the inference arises as a matter of common experience."

Many cases hold that a plaintiff must make a *prima facie* case by his own evidence and that, in determining whether he has made a *prima facie* case, the inference in question may not be indulged. But, under this rule, once a *prima facie* case has been made, as in the case at bar, the failure of the opposing party to meet this *prima facie* case by calling witnesses peculiarly available to him, gives rise to the inference that their testimony would not have been favorable. Jones on Evidence (2d ed.), 178, § 104; *Rosenstrom v. North Bend Stage Line, supra.*

*McDuffee's Adm'x v. Boston & M. R. R.*, 81 Vt. 52, 69 Atl. 124, 130 Am. St. 1019, decided thirty-three years ago, is the only case which supports appellant's contention; however, it is contrary both to reason and authority. Most of the cases cited in support of the text (sections quoted above) of Corpus Juris, upon which appellant relies, apply the rule cited and quoted above and they do not sustain appellant's position.

"It is insisted that there is a presumption against the appellant, who was the defendant below, because of his failure to call J. K. Moore as a witness. If we are correct in our view that the plaintiff did not make a *prima*

*facie* case, then no presumption can arise against the defendant for failing to call Moore or any other person, to testify. No duty or natural motive can be attributed to a defendant to call witnesses until there is a *prima facie* case against him. The basis of a presumption against a party for failure to produce evidence peculiarly within his power is the natural motive which he is supposed to possess to produce evidence in his favor. Hence, the law raises the presumption that, if he does not follow such natural motive, it is because the evidence would, if produced, be against him. The force of the presumption depends upon, and corresponds in degree to, the force of the motive. If there can be no natural motive to produce, there can be no presumption against the party for failure to produce. Such presumption cannot take the place of proof on the part of the other party carrying the burden of proof. *Stout v. Sands*, 55 W. Va. 663; Whart. Ev., section 1267; 16 Cyc. 1064; *Dial v. Mo. Pac. Ry.*, 36 Mo. App. 454. See also: *Union Trust Co. v. McClellan*, 40 W. Va. 405; *Garber v. Blatchley*, 51 W. Va. 147; *Vandervort v. Fouse*, 52 W. Va. 214; *Wells-Stone Co. v. Truax*, 44 W. Va. 531; *Hefflebower v. Detrich*, 27 W. Va. 16; *Dewing v. Hutton*, 48 W. Va. 576; *Wheeling v. Hauley*, 18 W. Va. 472; *Robinson v. Woodford*, 37 W. Va. 377." *Cooper v. Upton*, 60 W. Va. 648, 654, 64 S. E. 523.

In the case at bar respondent made a *prima facie* case and there was ample motive attributable to appellant.

In *St. Louis & S. F. R. Co. v. Finley*, 122 Tenn. 127, 118 S. W. 692, it was held that, *where* the *plaintiff* in an action against a railroad company for personal injuries *fails to make out a case*, it is not incumbent upon the railroad company to introduce any evidence; and, therefore, no presumption of fact arises from the failure of the defendant railroad company to cause certain witnesses of the accident to testify.

In *Eldridge v. Terry & Tench Co.*, 129 N. Y. Supp. 865, 145 App. Div. 560, it was held that, if the plaintiff does not make out a *prima facie* case, the failure of the

defendant to call a witness raises no presumption against the defendant. The court said:

"The presumption which arises from a failure to produce a witness under one's control who is shown to have knowledge of the circumstances of a material question does not supply an entire lack of proof on the part of the opposing party, but goes only to corroborate proof already given which constitutes a *prima facie* case."

See, also, *Flynn v. N. Y. Elevated*, 50 N. Y. Super. Ct. 375; *Southern Express Co. v. B. R. Electric Co.*, 126 Ga. 472, 55 S. E. 254, 204; *Poirier v. Terceiro*, 224 Mass. 435, 113 N. E. 204; and Annotation 70 A. L. R. 1326 *et seq.*

The adverse inference has been frequently applied against parties who offered no evidence and under circumstances similar to those in the case at bar. The inferences arising from failure to testify, failure to call witnesses, or failure to produce demonstrative evidence are based upon the same ground and are subject to the same qualifications, merely representing various applications of the same rule. 10 R. C. L. 884-886, § 32.

In *The New York*, 175 U. S. 187, 44 L. Ed. 126, 20 S. Ct. 67, the issue concerned the maneuvers of two steamers involved in a collision, the "Conemaugh" and the "New York." The court said:

"Inasmuch as no witnesses were sworn from the New York we are compelled to judge of the propriety of her manoeuvres from the admissions in her answer and from the other testimony in the case."

In the course of its opinion the court stated that the failure of the "New York" to respond to whistle signals and lights was unexplained and indicated a defective lookout, and then continued:

"The force of this presumption of a defective lookout is greatly strengthened by the fact that the claimant did not see fit to put upon the stand the officers and crew of the New York, who certainly would have been

able to explain, if any explanation were possible, why the lights of the Conemaugh were not seen and distinguished or her signals heard. It was said by this court in the case of *Clifton v. United States*, 4 How. 242, 246, that 'to withhold testimony which it was in the power of the party to produce in order to rebut a charge against him, where it is not supplied by other equivalent testimony, might be as fatal as positive testimony in support or confirmation of the charge.' "

*Robinson v. Union Cent. Life Ins. Co.*, 144 Fed. 1005, in which the defendant offered no evidence, and the case went to the jury on the evidence submitted by the plaintiff, is another case where the court applied the presumption against a defendant who had offered no evidence. The court held that the plaintiff had to produce some evidence, but that where his evidence is open to two interpretations, and it is within the exclusive power of one party to show what the truth is, the failure of such party to produce the evidence will authorize the jury to presume that, if produced, it would be unfavorable to him.

In *Haverstick v. Pennsylvania R. Co.*, 171 Pa. 101, 32 Atl. 1128, there was slight negative testimony indicating that a signal was not given by the defendant at a crossing. There was an entire absence of evidence for the defendant on the issue. The court stated that the plaintiff had made a *prima facie* case and in discussing the weight of the evidence, said:

"Not only was it the exclusive province of the jury to determine the value of this negative evidence, in view of the age, intelligence and candor of the witness, but they had the right to consider the entire absence of any positive testimony contradicting his statement, as tending to corroborate him. There were upon the locomotive approaching the crossing an engineer and fireman who knew their duty, and knew whether they had performed it. Within ten seconds after the bell ought to have been rung, or the whistle sounded, the train ran over a man on a crossing; he ought not to

have been there, if they gave warning; certainly, it instantly occurred to them to mentally inquire whether his death resulted from their negligence in not giving warning, or in his from not heeding it. Besides the train hands, there were at the station other employees of the company whose duty it probably was to listen for sounds of approaching trains. Not a witness is called to prove warning was given; nothing is offered to explain their absence because of death, illness or removal; so far as appeared at the trial, all could have been produced to testify affirmatively to the fact of warning, if it had been given. 'It is certainly a maxim, that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted.' Note 2, sec., 1266, Wharton's Law of Evidence, vol. 2, and the cases there cited. If a single witness, who had been in a situation to hear this warning, had testified affirmatively it was given, the authorities on the comparative value of affirmative and negative testimony, cited by the learned counsel for appellant, would have been to the point. The strongest of those relied on by him is *Culhane v. Railroad Co.*, 60 N. Y. 137. It holds thus:

" 'As against positive affirmative evidence by credible witnesses to the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more witnesses that they did not hear it to authorize the submission of the question to the jury. It must appear that they were looking, watching, and listening for it; that their attention was directed to the fact, so that the evidence will tend to some extent to prove the negative. A mere "I did not hear" is entitled to no weight in the presence of affirmative evidence that the signal was given, and does not create a conflict of evidence justifying a submission of the question to the jury as one of fact.'

"This language is somewhat stronger than is established by the weight of authority; but giving it all the force its emphasis warrants, it is a complete justification of the court below in submitting this evidence to the jury. Not only was there not a spark of affirmative evidence contradictory of the negative, but, if capable

of contradiction, there were witnesses within reach who could have contradicted it; they were not called, and there was no contradiction. What is the obvious inference? That the negative was the truth."

See, also, Jones on Evidence (2d ed.), 178, § 104; *Douglas v. Insurance Co. of North America,* 215 Mich. 529, 184 N. W. 539; *Indianapolis St. R. Co. v. Darnell,* 32 Ind. App. 687, 68 N. E. 609; *Reetz v. Mansfield,* 119 Conn. 563, 178 Atl. 53; *Danner v. South Carolina R. R. Co.,* 4 Rich. (S. C.) Law 329, 55 Am. Dec. 678; *Van Slyke v. Chicago, St. P. & K. C. R. Co.,* 80 Iowa 620, 45 N. W. 396; *Hicks v. Nassau Electric R. Co.,* 62 N. Y. Supp. 597, 47 App. Div. 479; *Kirby v. Tallmadge,* 160 U. S. 379, 40 L. Ed., 463, 16 S. Ct. 349; *Mammoth Oil Co. v. United States,* 275 U. S. 13, 72 L. Ed. 137, 48 S. Ct. 1; and *Gaskill v. Amadon,* 179 Wash. 375, 38 P. (2d) 229.

In *Yakima First Nat. Bank v. Pettibone,* 182 Wash. 663, 47 P. (2d) 997, the plaintiff contended that a transfer of real estate was in fraud of itself as creditor, and sought to subject the property to its judgment. Defendants (appellants) offered no evidence except the deed under which the defendants, husband and wife, conveyed the property in controversy to their daughter, who was also a defendant. No evidence whatsoever was offered by the defendants on any issue and particularly not on the issue of good faith. Appellants contended that respondent bank did not make out a *prima facie* case against them. We said:

"While the evidence is rather meager, we are of the opinion that, it appearing *inter alia* that Mr. and Mrs. Pettibone, after becoming indebted to respondent, conveyed to their daughter property which they valued at from $3,000 to $3,500, upon a consideration expressed as hereinabove set forth, the burden of proof shifted to appellants to establish the *bona fides* of the transaction as against respondent. In reaching this conclusion, we consider, of course, all the evidence and lack of evidence disclosed by the record. . . .

"None of the appellants testified, and, as stated by this court in the case of *Bank of Chewelah v. Carter,* 165 Wash. 663, 5 P. (2d) 1029, this fact, without explanation, fairly gives rise to the inference that their testimony would neither have supported their pleaded denials of the allegations contained in the respondent's complaint nor tended to disprove the evidence offered by respondent."

See, also, *Harold v. Toomey,* 92 Wash. 297, 158 Pac. 986.

I concur in the argument of counsel for respondent which substantially is as follows: The authorities are numerous which sustain the view that the plaintiff must make out a *prima facie* case by his own evidence, without reliance upon inferences arising from his opponent's failure to produce evidence available to him. There is slight authority, and no reason, supporting the appellant's contention that there can be no unfavorable inference even if the plaintiff has made out a *prima facie* case, simply by reason of the fact that the defendant has not introduced any evidence.

The status of the authorities is summed up in 10 R. C. L. 885, § 32, as follows:

"The courts very generally have applied the general inference in cases where the defendant introduced no evidence on the trial, but authority may be found for the statement that no adverse inference can be drawn in such a case."

As stated above, the authority for the statement that no adverse inference arises in such a case is quite meager and is not only inconsistent with the general application of the inference against a party introducing no evidence, but is directly contrary to the reasoning of each case in which the inference is applied. I adopt the following argument from the brief of counsel for respondent:

"It is said that the rules of law governing the subject matter are rested upon common sense rather than metaphysical considerations. If, as a matter of common experience, a party would be expected to produce evidence at his command, if favorable, and he does not do so, it will be inferred that the evidence is not favorable. Refusal to introduce any evidence cannot affect the inference under the reasoning which led to its recognition."

The judgment should be affirmed.

