[No. 28830. Department One. January 8, 1943.]

PAUL C. SMITH, *Appellant*, v. W. F. LUDWIG, *Respondent*.[1]

[1] Reported in 132 P. (2d) 735.

156

*J. P. Tonkoff,* for appellant.

*Harry L. Olson,* for respondent.

MALLERY, J.—Plaintiff brought this action to recover damages, arising out of a collision between his car and a truck owned by the defendant. The jury disagreed. The court thereupon granted defendant's motion for judgment of dismissal, notwithstanding the disagreement of the jury. The plaintiff appeals.

For ten years prior to 1940, respondent had used his truck for hire, hauling principally for one George Marley. In 1938, respondent employed Harold Tuttle to drive the truck on an hourly basis. At the commencement of the 1939 fruit season, respondent and Harold Tuttle entered into an oral agreement whereby respondent furnished his truck and Harold Tuttle operated it on a percentage basis, respondent paying for losses and the repairs to the truck and Harold Tuttle furnishing the labor. From the gross proceeds, the cost of the gas and oil was deducted and the balance divided equally between them. The operation was apparently profitable, for in 1940 respondent purchased another truck, the one involved in the collision.

In 1940, the parties continued the operation under the 1939 agreement. It appears that, at the beginning of each season, respondent negotiated with George Marley for the hauling of Marley's fruit. At that time, directions were given by Marley to respondent as to where the fruit was to be picked up and to whom it was to be delivered. Thereafter, and for the remainder of the season, any and all directions given by Marley were given to Harold Tuttle. Respondent did not interfere with Harold Tuttle in his operation of the business. He made no objection to Harold Tuttle's selecting his brother, Stanley Tuttle, to drive the new truck in 1940. In the operation "the boys," as respondent

referred to the Tuttles, lived on the respondent's "place," in a cabin, and boarded at the respondent's house. At night they left the trucks at respondent's place, except occasionally when one of the trucks was left at the "warehouse." Respondent testified that he did not have the right to direct Harold Tuttle as to whom he would employ, and that he did not pay Stanley Tuttle or know how much he was paid. However, on cross-examination the respondent further testified:

"A. After we made the agreement for him (Harold) to take the trucks on a share basis, he said to me, he says, 'You don't care if Stanley helps me on the truck?' I told him not as long as the work was done right. Q. And Stanley was satisfactory? A. Yes, sir."

The court concluded that the truck, at the time of the collision, was legally in possession of Harold Tuttle, for whom Stanley Tuttle, the driver, was working; that the respondent had no right to dictate as to whom Harold Tuttle should employ to drive the truck; that Harold Tuttle was an independent contractor, and therefore respondent could not be held responsible for the negligent operation of the truck by Stanley Tuttle.

The term independent contractor designates a person who, in pursuit of an independent business, undertakes to perform a specified piece of work or to render a particular service for another without submitting to control in the manner of performance. *McFarland v. Commercial Boiler Works,* 10 Wn. (2d) 81, 116 P. (2d) 288.

The question for decision is: Was Harold Tuttle, as a matter of law, an independent contractor, so that the rule of *respondeat superior* did not apply, or was there evidence or reasonable inferences therefrom, from which the jury could have concluded that, even though respondent had not actually exercised control

over the operation of the truck, he had not relinquished his right to do so?

From the fact that respondent had a considerable investment in the trucks, that he bore all the losses, paid for one-half the gas and oil; that Harold Tuttle consulted him about employing his brother Stanley Tuttle; that he gave his consent on condition that the work was "done right"; that the Tuttles lived, worked, and kept the trucking equipment within easy observation of respondent; that the work was done under a loose working arrangement without any formal contract; that there was a continuity of services from a former master and servant relationship; that the Tuttles had no equipment that they could have used in rendering services for any one other than respondent; and from the situation of the parties and the surrounding circumstances generally, the jury might have concluded that Harold Tuttle was not an independent contractor. It is a question for the jury.

The judgment is reversed and the cause remanded for trial.

ROBINSON, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.